JOSEPH FELLOWS, Trustee, etc., Appellant, *v.* LEWIS NORTH-
RUP, impleaded, etc., Respondent.

The conclusions of the referee upon matters of fact are binding upon this
court, if there is any evidence to sustain them. If there is no competent
evidence to sustain such conclusions, or if the undisputed evidence estab-
lishes the contrary, it then becomes a question of law, and this court is
at liberty to examine it.

H. was the agent of F. in collecting the amounts due upon his bonds
and mortgages. The defendant purchased the premises in question, upon
the assurance of H., that they were free from incumbrances, and gave to
him his note for the amount unpaid on the purchase. It was soon dis-
covered, that they were subject to the mortgage in suit, belonging to the
plaintiff. H. thereupon agreed, that all the money paid to him by the
defendant should apply on the mortgage. Various sums were thus paid,
which were indorsed upon the defendant's note, but were not indorsed on
the mortgage, nor remitted to the plaintiff. *Held*, that these payments
were made to H., personally, and not as the agent of the plaintiff, and
that the agreement to apply the same upon the mortgage was the per-
sonal engagement of H., and that they did not operate as payments on
the mortgage.

The duties of agents, in the receipt and transmission of money, considered.

APPEAL from judgment of General Term, affirming judg-
ment entered on decision of judge at Special Term.

This is an action brought to foreclose a mortgage executed
by Ezra G. Stoddard to the plaintiff.

The respondent, Northrup, is a subsequent grantee of the
mortgaged premises, and the defense interposed by him is
payment.

The judge before whom the case was tried found, that,
besides the payment of six hundred and forty dollars speci-
fied in the complaint, the defendant, Northrup, had paid on
the bond and mortgage sought to be foreclosed, March 2,
1854, three hundred and seventy-five dollars, May 2, 1854,
four hundred and fifty dollars, and July 1, 1854, one hun-
dred and thirty-two dollars and seventy-five cents. These
several payments were allowed, and a decree of foreclosure
made for the balance.

The payments appear, from the evidence, to have been
made substantially under the following circumstances: The

bond and mortgage were given to secure part of the pur-
chase-money of the mortgaged premises, and bear date Jan-
uary 1, 1850 ; on the 16th of October, 1850, Stoddard, the
mortgagee, conveyed the premises to Joseph F. Hill ; on the
3d of August, 1852, Hill conveyed the mortgaged premises,
by warranty deed, to John McCarthy, and the deed declared
that the premises were subject to the lien of the mortgage
in suit ; *and Hill thereon covenanted and agreed to pay the
same as it should become due, and save McCarthy harmless.*
On the 24th March, 1854, McCarthy conveyed the premises
to the defendant, Northrup, by deed, with covenants of quiet
enjoyment.

McCarthy gave Hill a bond and mortgage on the premises,
dated February 1, 1853, to secure one thousand five hundred
and forty dollars.   When Northrup purchased the premises,
he inquired of Hill about the title, and he said it was all
right except *the McCarthy bond and mortgage.*   Hill drew
the deed from McCarthy to defendant, Northrup, and at the
same time Northrup paid Hill eight hundred dollars on
account of the purchase, and took his receipt therefor, and
Northrup also, at the same time, gave Hill his note for nine
hundred and one dollars and thirty-six cents, with interest,
payable July 1, 1854, balance of the purchase-money.

Northrup took his deed to the clerk's office to be recorded,
and there, for the first time, heard of the bond and mort-
gage from Stoddard to Fellows.   Northrup, the same day, or
soon after, went back to Hill and told him he understood
the mortgage in suit was on the property, and Hill admitted
it ; and then it was agreed, that, when Northrup paid to
Hill, the money so paid should apply on the bond and
mortgage.

At that time, and for several years previous, Fellows lived
at Geneva, and Hill was his agent in collecting the amounts
due on his bonds and mortgages, and kept an office in
Buffalo.

Hill commenced acting as Fellows' agent, in selling off
the Indian Reservation, in the spring of 1854, and sold off
from twenty-five to thirty thousand acres of land for him,

and had forty or fifty contracts a year. The accounts were kept by him at Buffalo, and he had all these matters for settlement. He continued the agent of Fellows until 1857, at which time Hill failed. Hill also carried on several large branches of business, on his own account.

It also appears, that the bonds and mortgages taken by Fellows were entered in a book kept by Hill for that purpose, and then taken into Fellows' possession. But Hill received the money, paid on account, of the bonds and mortgages which was also entered in the book and accounted for by Hill.

Northrup had previously bought land of Fellows, through Hill, given bonds and mortgages, and generally paid them to Hill, which payments were allowed by Fellows. Sometimes he took receipts for the money so paid, to be applied on the bonds and mortgages, and at other times did not.

It appeared that Hill never made such application of the payments in question, but the payments were entered from time to time on the note of Northrup, given to Hill.

The plaintiff appealed from the judgment of the Special Term, and it was affirmed at General Term, and plaintiff appealed to this court.

*F. E. Cornwell*, for the appellant.

*S. B. Porter*, for the respondent.

HUNT, Ch. J. The judge holding the Special Term has found and decided, as matter of fact, that the three sums in question were paid upon the bond and mortgage sought to be foreclosed. This finding necessarily involves the authority of Hill to receive the money as the agent of the plaintiff, and the fact that he did receive it in that capacity. These conclusions of fact are binding upon us (Code, 267, 272), if there is any evidence to sustain them. We are not to weigh, measure or balance the evidence. If there is, however, no competent evidence to sustain such conclusions, or if the undisputed evidence establishes the contrary, it then becomes

a question of law, and we are at liberty to examine it. (*Pratt* v. *Foote*, 5 Seld. 463; *Farmers' Bank* v. *Vail*, 21 N. Y. 486; 22 id. 323; 20 id. 184, 522.) That Hill was the agent of the plaintiff in collecting the amounts due upon his bonds and mortgages generally, was reasonably established. This must be taken as one of the facts of the case. Whether there is evidence, that the particular payments in question were made to him in that capacity, is a point which I propose to examine. I shall lay out of view the evidence given by Hill, which shows that he did not receive the money for the plaintiff, but for himself. The evidence to establish the agency is that of the defendant himself. If it, however, establishes a condition of things, from which the legal inference must follow, that Hill acted for himself in receiving the money, and not as the plaintiff's agent, then, as a legal result, there was no payment, and the judgment must be reversed. The defendant testifies, that, on the 24th of March, 1854, he bought the premises in question of Hill, upon the assurance, that they were free from any incumbrance, except a mortgage given by one McCarthy; that the amount to be paid for the purchase was ascertained, which was the amount of the McCarthy mortgage, that he paid Hill $800 in cash, gave him his note for $901.36, payable on the first of July following, and the McCarthy mortgage was thereupon canceled. He took his deed and canceled mortgage to the clerk's office for record, and there ascertained that the mortgage in suit was a lien upon the property he had just bought. He saw Hill soon after, and before he paid any further money, and Hill admitted the existence of the lien. The arrangement then made, is stated by the defendant thus: "He (Hill) said, when I paid him the money, it should apply on the Stoddard mortgage." On his cross-examination, he says, "I don't know that Hill said how soon he would take up the Stoddard bond and mortgage. He said he would apply the money as fast as I paid it. I paid the sums indorsed at the date on which they are indorsed, and the rest I paid before the note became due." On his re-examination, he says, "I paid Hill the money to apply on the Stoddard mortgage."

On his re-cross, he says, "The payments were indorsed on the note at the time they were made, the one of $450, I paid to Jenkins, Hill's book-keeper, in a certificate of deposit; when I made the last payment, I called for the note, and it was given up to me." Being further re-examined, he says, "I did not ask that the payments should be indorsed on the note; I don't remember its being produced when the payments were made."

In few words, this is the case. The defendant gives Hill his note for $901, due on his land purchase. He discovers the incumbrance, and Hill agrees that all the money paid to him shall apply on the mortgage. Is this money received by Hill, when it first comes to his hands, as a payment on the note held by him, or as a payment on the mortgage to Mr. Fellows? If the former, then it is received by him not as agent for the plaintiff, but for himself, and his accompanying promise to the defendant, that he will pay it to the plaintiff upon the mortgage, is a personal engagement merely.

The defendant does not testify that he paid the money on the mortgage, or to Hill for the plaintiff, or that Hill professed to receive it as agent for the plaintiff. He says, simply, that he agreed "to pay to Hill." In every instance the expression is used "to pay to Hill," and in none that he was to pay to the plaintiff. When paid to Hill, it became his money. If he kept his promise, he would at once remit the same, or an equal amount, to the plaintiff, on behalf of the defendant, and thus the defendant's debt would be paid. It would be paid, however, not by the receipt of the money by Hill, for he received his own money, but by its transmission to the plaintiff. Hill was not the plaintiff's agent to receive money on notes given to Hill, but simply on mortgages given to the plaintiff. Upon this uncontradicted evidence, the law adjudges, that Hill received the money for himself, and as his own. So far as he transmitted to the plaintiff, he acted as the agent of the defendant, and in fulfillment of his promise to him.

An agent authorized to receive payment, can receive it in money only. Ordinarily, he can receive it when it becomes

due, and not before. He cannot commute the debt for another thing. He cannot compound the debt, or release it on composition, or submit it to arbitration. (Story on Agency, §§ 99, 100.)

It is a general rule, also, that agency is a matter of personal confidence, and cannot be delegated. (Story on Agency, § 146.) Hill was the agent of the plaintiff to receive payment of his mortgages, but he could not delegate that power to Jenkins. While Hill was engaged in a large real estate business on his own account, as well as in the business of lumbering and distilling, it was proper that he should have a book-keeper, and that such book-keeper should be his agent in the receipt of moneys. When $450 was paid to Hill by the defendant upon his note of $900, it was right, proper and legal, that Jenkins, as Hill's agent, should receive the money, and indorse it on the note. It was not right, proper or legal, that the plaintiff should be charged with the receipt of this money. He had never appointed Jenkins as his agent, or authorized him to receive money in his behalf. The receipt in law was by and for Hill alone.

The rule is well settled, also, that an agent can have no personal interest in the subject-matter of the agency, and cannot act when he is so concerned. The law of agency proceeds upon the idea, that the agent is devoted to the interests of his principal, and that his judgment, his feelings and his interests, all concur in the discharge of his duty. (Story, § 210.) An agent employed to sell, cannot buy. An agent employed to buy, cannot himself be the seller, nor can a trustee be interested in the subject of the trust. (Story, § 211; see also, *N. Y. Central Ins. Co.* v. *National Co.*, 4 Kern. 485; *Bently* v. *Columbia*, 17 N. Y. 421; and *Conkey* v. *Bond*, recently decided in this court.) Would the plaintiff have looked upon this transaction, if reported to him, as it is claimed by the defendant, to have existed, as in the legitimate discharge of Hill's agency? He would have condemned the mixing up of his business with that of Hill, of his mortgages with Hill's notes. He would have required, that his business be kept by itself, that, when money was

Opinion, per MILLER, J., dissenting.

paid on his account, it should be held separately as his, and when paid to and for Hill, that he would have no concern with it. As a prudent man, who knew the confusion so commonly arising from the intermixture of trust duties with private interests, who knew the importance of a rigid separation of trust funds from private receipts, and the necessity of an immediate transmission of the latter, he could have entertained no other opinion. Certainly it is the judgment of the law upon the case. Suppose the plaintiff had been in the office of Hill when the $450 was paid to Jenkins. The defendant enters, and says, I wish to pay Mr. Hill $450, Jenkins receives it, takes down the plaintiff's note to Hill, and indorses the amount on it. The plaintiff hears it and sees it as a matter of no importance to him, and makes no inquiry for his money. Suppose, on the other hand, he had said, I wish to pay Mr. Hill $450, as the agent of the plaintiff, on a mortgage made by Mr. Stoddard. This announcement would have had quite a different effect. The business should be so conducted, as that it would be understood by the plaintiff as his affair, if he had witnessed the transaction. Again, would not Hill be much less particular in making a deposit to the credit of his principal of money thus received, than if there had been no such machinery about it? I think the moral duty to his principal would sit more lightly upon his conscience, than if the money had been paid on Stoddard's mortgage directly.

Upon the statement of the defendant himself, and giving him the benefit of all inferences to which he is entitled, and allowing no influence to the contradictory evidence, I think this judgment erroneous, that it must be reversed, and a new trial ordered.

MILLER, J. (dissenting.) The principal question to be determined in this case is, whether the payments made by Northrup to Hill, the agent of the plaintiff, were payments on the bond and mortgage made by Stoddard to Fellows. There is evidence to establish that there was an agreement between Hill and Northrup, that the payments made by the

latter should be thus applied, and of a promise by Hill to that effect. The solution of the question presented, must, under the circumstances, depend upon the fact, whether Hill was a general agent of the plaintiff, and had authority, from the fact that such agency existed, to make such an agreement, and whether the agreement thus made, and the payment of the money under it, was a present application which was obligatory and binding upon the plaintiff.

Northrup purchased the property without knowledge of the existence of the mortgage now in question. At the time when the deed was executed, he inquired of Hill, who drew it, about the title, and was informed it was all right; and upon being advised of the existence of the Stoddard mortgage, he told Hill of that fact, and Hill then agreed, as Northrup testifies, and as the evidence sufficiently proves, that the money paid in should be applied upon the mortgage, and Northrup made the payments accordingly.

There is not, I think, any question, but Hill had ample authority from the plaintiff to receive payment of the bond and mortgage. Hill had been his agent for a considerable period of time, for the sale of his real estates, and for the collection of bonds and mortgages, and the tendency of the evidence is, that he was fully authorized to transact business relating to these matters.

The fact, that he held Northrup's note in part payment of the purchase-money of the premises, does not, in my opinion, detract from the authority which he otherwise had, to act for his principal, or prevent the making of the agreement which he actually did make with Northrup.

If he had applied the money as he promised, it will not be claimed that the application was not perfectly legitimate and proper. Does it alter the case because he failed to carry out the contract? I am inclined to the opinion that it does not, and in such an event the party who employed Hill as an agent, must suffer any consequences arising from such failure.

It is said that the fact of Hill's individual interest in the matter, was known to Northrup and not to the plaintiff, and

that this incapacitated Hill from acting, in respect to this mortgage, as the agent of the mortgagee.

We are referred to *The N. Y. C. Insurance Co.* v. *The N. Y. C. Insurance Co.* (4 Kern. 85) as an authority to sustain this position. In the case cited, it was held, that, when an agent of one insurance company re-insured another company of which he was a director and secretary, acting for both, that the contract was not binding. The decision was placed upon the ground, that the trustee or agent of one person cannot make a valid contract respecting the subject-matter to which the trust or agency relates, where he has a personal interest.

His constituent, it is said, is entitled to have all his skill and judgment employed in his service. The case cited bears no analogy to the one to be determined, nor is any such principle involved. It is easy to discover, that, in the case cited, the agent might very well be in a position where his interest would be affected, and where his principal would fail to receive the full benefit of his skill and judgment.

But no such question is involved here. The contract was not in reference to the subject-matter of the trust which required the exercise of disinterested skill and the diligence and zeal of the agent, for the exclusive benefit of the principal (see Story on Agency, §§ 210, 211), but simply to apply money paid upon a bond and mortgage.

The note held by the agent could not properly interfere with that act, and it did not require the employment of any degree of judgment or skill, or discretion to make application. It was a question of integrity and not of judgment. The agreement would not deprive the principal of the full and entire benefit of the agent's services, and it cannot be maintained upon any sound legal principle, that an agent cannot receive money from a person indebted to him on his own account, because he might possibly misapply the fund, for he might misappropriate the money thus received, even if there was no debt due him, from the person who paid it.

I do not see that the agent, in a case of this kind, has any such interest as to avoid his contract, and have come to the

conclusion, that the principle contended for has no application.

It is insisted, that, even if Hill and Northrup agreed that the money should be paid on the bond and mortgage, and not upon the note, the withdrawal of the security by the creditor was a notice that the payment must be made to him, personally, and, not having the bond and mortgage, Hill must be regarded as Northrup's agent, and not as the agent of the plaintiff.

To sustain this position, the plaintiff relies upon *Williams* v. *Walker* (2 Sands' Ch. 325), and the authorities there cited.

It was decided, in the case cited, that a solicitor or agent, employed to procure an assignment of a bond and mortgage, or to invest money upon such securities, is not thereby authorized to receive principal or interest, when his client or constituent retains possession of the securities.

An examination of the authorities referred to discloses, that in no instance was there any proof to establish a general agency of the party to transact business for the person to whom the securities belonged, or any express authority to receive the money for the use of the principal, and, in most of the cases, the payments were made to the scrivener by whom the money was loaned.

It will be observed, that the party who thus received the money had no other business relations with the principal, and what he did related only to the particular transaction, and nothing else. He was not engaged in any special business, and did not sell lands, receive payments, or securities generally, and keep and render an account for moneys received, and of his services.

The agent's authority here does not depend upon the possession of the bond and mortgage at all; according to his own testimony, he kept a book containing a statement of the bonds and mortgages belonging to the plaintiff, and, from the statements thus made, he collected the moneys, and entered the payments made, in that book.

The proof shows, that he acted as the general agent of the plaintiff during the whole period of time within which

the payments were made, received moneys on bonds and mortgages taken upon the sale of plaintiff's lands, and gave receipts in his own name.

There was proof to establish an authority to receive the money in question, and, when such is the fact, the principle invoked has no application.

If the agent has express or implied authority to receive money for the use of the principal, it is not material, in any way, whether he has or has not the securities in his possession, and a payment to him is as effectual as if he had them in his possession.

Considering the whole testimony in the case, there cannot, I think, be any doubt that Hill had authority to receive payment on the bond and mortgage in question, and to agree to apply the moneys received upon the same.

And it does not change the liability of the plaintiff, because Hill held the note of Northrup.

The money was paid in good faith, under an agreement, that it should be thus applied, and it would operate exceedingly hard, if the plaintiff is not responsible.

He chose to employ Hill to transact his business, and held him out to the world as his agent, and he cannot complain if he is made liable for his acts.

The original fault, if any, was with the plaintiff, and it is eminently just, that the party least in fault should not suffer. Looking at the facts as they are now presented, I see no good reason to disturb the conclusion of the court, who heard the evidence, and saw the witnesses when examined upon the trial.

The question put to Albert Sawin, one of the defendant's witnesses, was, I think, properly overruled. On his direct examination, the witness testified to a conversation which he had with Hill, to the effect, that Hill had said that he was the agent of Fellows to receive the money, and that he would testify that this money was paid by Northrup to apply on this mortgage.

Before Sawin was examined, Hill was called and sworn as a witness, and gave evidence, that he did not recollect of

stating to Sawin, or of giving him to understand, that this money was paid to him upon the Stoddard bond and mortgage. Upon his cross-examination, Sawin stated, that he knew Hill to be a candid and truthful man, and was then asked the question, whether, knowing Hill to be candid and truthful, the fact, that his testimony now differs from what he supposed he told him, convinced him that he must have misunderstood him. The question was not proper, because it assumed, that Hill had contradicted Sawin, which was not true in point of fact, at the time when the question was put. He had only testified, that he did not recollect, which did not amount to a positive statement, and Sawin's statement was not a contradiction of Hill's want of recollection. Afterward, upon being recalled, Hill contradicted Sawin, but this did not make the evidence admissible, prior to the contradiction, and, to do so, Sawin should have been again examined as a witness. (*People* v. *Mather*, 4 Wend. 248, 249.) I am also inclined to think, that the testimony was not competent, because it called for the conclusion of the witness, upon the facts to which he had testified.

As the result to which I have arrived is adverse to the plaintiff, upon the main points involved, it is not necessary to examine the question raised by the counsel for the defendant, whether the case is properly presented for review.

The judgment of the General Term should be affirmed.

Woodruff, Mason, Bacon and Dwight, JJ., concurred with Hunt, Ch. J. Miller, Clerke and Grover, JJ., were for affirmance.

Reversed, and new trial ordered.