ANNIE U. SMITH, Executrix, etc., Appellant, *v.* ALEXANDER KIDD et al., Respondent.

SAME, Appellant, *v.* JOHN McKINNEY et al., Respondents

The fact that an attorney was employed by one proposing to loan money on bond and mortgage to draw the papers, and that the money was advanced upon the securities through the attorney, is no proof of authority upon his part to collect the principal, where he has not been entrusted with the custody of the securities; nor can it be inferred that the attorney was authorized to receive the principal, from the fact that he had authority to collect the interest.

*It seems,* that even if the attorney has been usually employed by the lender

to receive moneys, or has on other occasions received principal which he has paid over, this does not constitute such an authority.

The possession of the securities by the attorney, in the absence of proof *aliunde* of express authority, is the indispensable evidence of his authority to collect the principal.

Even if an attorney have authority to receive payment of an obligation, this does not authorize him to receive it before it is due.

Plaintiff upon being applied to by defendant McK. for a loan upon bond and mortgage, designated G., who was the attorney of McK. as an attorney to draw the papers, and sent to him a check payable to his order for the amount of the loan. The bond and mortgage were sent to and retained by plaintiff; she also sent to G. the money to purchase another mortgage on the same premises. The mortgage and assignment were delivered to and retained by her. G. received and paid over to plaintiff six months' interest on the mortgages. G. subsequently, and before one of the mortgages became due, without actual authority, received from McK. the full amount of principal and interest, giving receipts signed by himself as attorney. Plaintiff had the mortgages in her possession at the time, of which fact McK. was aware. G. promised to procure them. McK. applied to G. several times for the papers, but did not obtain them. He made no application to plaintiff, who was not advised of the payment until some seven years thereafter, and was not informed of all the circumstances until after G. had absconded. Up to this time G. had paid the interest regularly. G. received and paid over to plaintiff the principal on other bonds and mortgages in her possession on several occasions, the first occurring some two years after the payment by McK.; but only under a specific authority in each case, plaintiff executing satisfaction-pieces therefor.

In an action to foreclose the mortgage, *held,* that the evidence was insufficient to justify a finding that G. had authority to collect the principal upon the mortgages.

As to whether evidence that plaintiff recognized payments to G. of principal upon mortgages not placed in his hands for collection was competent for the purpose of establishing actual authority to make similar collections two years before, *quære.*

*Olcott* v. *Tioga R. R. Co.* (27 N. Y., 546) distinguished.

After plaintiff learned the fact that the mortgages had been paid, she received from G. a transfer of certain mortgages as security for what he had collected. There was no evidence that she knew, at the time of such transfer, when her mortgages had been paid, or that they were paid before she had authorized G. to receive the principal of any mortgages or before any thing had occurred from which it could be claimed that there was an appearance of authority, that G. was at the time the attorney for McK., that the receipts had not been given in her name, or that one of the mortgages had been paid before it was due. The

mortgages assigned proved wholly worthless. Plaintiff had other claims against G., and she testified that when she accepted the transfer she did not know the extent of her probable losses. *Held* (CHURCH, Ch. J., dissenting) that the acceptance of the securities was not, under the circumstances, a ratification of the payment, and did not estop plaintiff from repudiating it, or furnish evidence of original authority.

(Argued December 11, 1876; decided January 16, 1877.)

APPEALS from judgments of the General Term of the Supreme Court in the second judicial department affirming a judgment in favor of defendants, entered upon the report of a referee.

The action first above entitled was brought to foreclose a mortgage for $1,000, executed by defendant Kidd to one Hardenburgh, and assigned by the latter to plaintiff. The second action was to foreclose a mortgage for $2,400 on the same premises executed to plaintiff by defendant McKinney, to whom said premises had been conveyed.

The facts are set forth sufficiently in the opinion.

*M. H. Hirschberg* for the appellant. George was at no time invested with authority to collect the principal of the mortgages in suit. (*Williams* v. *Walker*, 2 Sandf. Ch., 325; *Doubleday* v. *Kress*, 50 N. Y., 410; *Wardrop* v. *Dunlap*, 3 T. & C., 531; 59 N. Y., 634.) Even if George had been authorized to collect plaintiff's bonds and mortgages, he had no power to collect them before they were due. (*Doubleday* v. *Kress*, 50 N. Y., 410; *Fellows* v. *Northrup*, 39 id., 121, 122; 2 Greenl. Evi., § 65.) There was no ratification by plaintiff. (*Coml. Bk.* v. *Warren*, 15 N. Y., 577; 2 Kent's Com., 614, note 2; Story on Agency, § 251 *a;* *Garvey* v. *Jarvis*, 46 N. Y., 313; *Nixon* v. *Palmer*, 4 Seld., 398; *Seymour* v. *Wyckoff*, 6 id., 213; *Smith* v. *Tracy*, 36 N. Y., 79, 83; *Baldwin* v. *Burrows*, 47 id., 212; *Howell* v. *Christy*, 3 Lans., 238; *Brass* v. *Worth*, 40 Barb., 648; *Owing* v. *Hull*, 9 Pet., 629.) Defendant was guilty of negligence and bad faith in making the payments without the production of the bonds and mort-

gages. (*Brown* v. *Blydenburgh*, 7 N. Y., 141; *Kellogg* v. *Smith*, 26 id., 18; *Purdy* v. *Huntington*, 42 id., 339.)

*C. F. Brown* for the respondent. George was authorized by plaintiff to receive payment of the mortgages in question. (*Olcott* v. *Tioga R. R. Co.*, 27 N. Y., 546, 561; *Wardrop* v. *Dunlap*, 1 Hun, 325; 59 N. Y., 634; Story on Agency, §§ 126, 254; *Medbury* v. *N. Y. and E. R. R. Co.*, 26 Barb., 564; *Kelly* v. *Falls Brook Coal Co.*, 4 Hun, 261; *Cushman* v. *Locke*, 2 Mass., 106; 1 Livermore on Agency, 47, 48.)

RAPALLO, J. The judge before whom these actions were tried, has found as facts, that the mortgages sought to be fore-closed were, in March and April, 1867, paid by John McKinney, the owner of the mortgaged premises, to Thomas George, as the agent and attorney of the plaintiff, and that said George was at the time duly authorized by the plaintiff to receive the same.

The conclusion that George was, at the time of the payments in question, authorized by the plaintiff to receive the same, is based upon a preceding finding that at the time the mortgage to the plaintiff of $2,400 was executed (March 31, 1866), and previous thereto, and from that time till March, 1874, the said George was, had been, and continued to be the general agent and attorney of the plaintiff in the matter of the investing, managing, collecting and receiving both principal and interest moneys belonging to the plaintiff as executrix.

The judge further found that in the spring of 1874, said George absconded. That shortly before absconding he gave to the plaintiff a list of the mortgages belonging to her which he had not collected, and informed her that the rest had been collected, and offered to secure the plaintiff therefor by transferring to her certain securities belonging to him. That such securities, or some of them, were so transferred to the plaintiff and taken and received by her upon account of, and as security for, the payment by George of the sums collected by him on the plaintiff's bonds and mortgages.

Exceptions were duly taken to these findings separately; also to certain refusals to find facts, and also to rulings upon the admission and rejection of evidence upon the trial.

There was no direct proof of authority from the plaintiff to George to collect the principal of the mortgages in controversy, or of any general authority to collect the principal of her mortgages.  Such authority was inferred by the court from the course of dealing between the plaintiff and George subsequent to the payment in question, and from her acceptance of securities from him in 1874, about the time of his absconding.  The effect of taking these securities will be separately considered.

The defendant called the plaintiff as a witness, and proved by her that she was applied to by McKinney for a loan, upon mortgage, of $2,400 in the latter part of March 1866 ; that she agreed to make the loan, provided the title was satisfactory, and designated Mr. George as the lawyer to draw the papers ; that George had never done business for her before that transaction.  It appeared that George had attended to the matter of the probate of the will of the testator, but this appears to have been his first transaction with the plaintiff in the matter of loaning money.  She sent him a check payable to his order for the $2,400, and afterwards on his statement by letter that there was a prior lien upon the property for $1,000, she agreed to take an assignment of that mortgage, and sent him a check for the purpose.  He closed the matter, and sent her the bond for the $2,400, and afterwards the mortgage and the assignment of the $1,000 mortgage after having procured them to be recorded, and she ever afterwards retained these papers in her possession until 1874, about the time George absconded.

After taking these mortgages, and before April 1, 1867, the date of the payment of the principal, George, as the attorney for the plaintiff, received and paid over to her six months' interest, but the plaintiff testified that she never gave him any general authority to collect the principal of her mortgages.  She did, from time to time, give him express

authority to receive payment of particular mortgages, of which she executed satisfaction-pieces, and to reinvest the money, but none of these transactions occurred until after the payment now in question. None of her mortgages had then been paid off.

George was the attorney of McKinney from before March 31, 1866, to and including April 1, 1867. This fact is found. On the 28th of March, 1867, and while the papers were in plaintiff's possession, McKinney paid to George $1,000, and took from him a receipt, as follows:

"Received of Jno. McKinney, one thousand dollars, to be applied on mortgage to A. U. Smith, executrix.

"*March* 28, 1867.

T. GEORGE,<br>*Atty.*"

On the 1st of April, 1867, McKinney made further payments to George, for which he gave a receipt, as follows:

"Received April 1, 1867, of John McKinney the amount of mortgage to Miss Smith.

"THOMAS GEORGE."

$1,000
2,275
  244
———
$3,519

McKinney at this time asked for his papers, but was informed by George that Miss Smith was not at home, and was told to call in the next time and he could get them. McKinney testified that George agreed to get the papers. He was fully aware that George did not have them. George then handed the money back to McKinney and told him to take it to the Newburgh bank and deposit it to his (George's) credit, which McKinney did.

At the time of this payment the $2,400 mortgage was not due, being payable April 1, 1871, and having still four years to

run. No inquiry appears to have been made by McKinney, whether the plaintiff would consent to the mortgage being paid off before maturity, nor was she in any manner notified of the payment. McKinney applied several times subsequently to George for his papers, but did not obtain them ; he made no application to the plaintiff, and did not inform plaintiff of the facts until after George had absconded in 1874.

That George, at the time of receiving this money intended to defraud either his client, McKinney, or the plaintiff, is quite apparent, for he not only omitted to inform plaintiff of the payments, but on the following day, April second, he wrote to her for $3,500, for which he sent her the bond of one Mr. Laughlin, notwithstanding that he already had in his possession the $3,519 received from McKinney ; and from that time, during a period of six or seven years, he regularly paid to her semi-annually, the interest on the McKinney bonds and mortgages of $2,400, and $1,000 treating them as subsisting securities, and she having them in her possession.

Laying out of view the subsequent dealings had by the plaintiff with George, in ignorance of his fraudulent conduct, it is very plain that there is no evidence, that at the time of this payment, April 1, 1867, George had any authority to receive the principal of these two mortgages as her attorney. Had this controversy arisen immediately after that payment it is clear that the defendant must have failed in his defence. Miss Smith, the plaintiff, was the only witness by whom he sought to prove actual authority, and she expressly negatived it. There was no evidence of apparent authority at that time, for George had never before undertaken to collect principal. The fact that the plaintiff, on the 31st of March, 1866, advanced the money to McKinney through George was no proof of authority to him to collect the principal, when she did not intrust him with the custody of the securities, but held them in her own possession. Neither was the defendant warranted by the fact of the attorney being authorized to collect the interest, in inferring that he was also author-

ized to receive the principal. Such authority in the absence of direct proof, may, in some cases, be inferred from the attorney having possession of the bond and mortgage, but in such cases it is incumbent upon the debtor who makes payments to the attorney, to show that the securities were in his possession on each occasion when the payments were made, for the withdrawal of the securities would be a revocation of the authority. (*Williams* v. *Walker*, 2 Sandf. Ch., 325, and cases cited; *Doubleday* v. *Kress*, 50 N. Y., 410.)

The finding that George was the general agent of the plaintiff in the matter of collecting both principal and interest prior to, and at the time of, the payment in question, therefore, depends wholly for its support upon the subsequent transactions, from which a general agency is sought to be implied retroactively. These transactions consisted in the receipt by George of the interest on plaintiff's bonds and mortgages and his payment over of such interest to the plaintiff, while she retained possession of the securities. That authority to collect interest in such cases does not afford ground for inferring authority to collect principal, where the agent or attorney is not intrusted with the possession of the securities, was expressly adjudicated in *Williams* v. *Walker* (2 Sandf. Ch., 325). That decision is abundantly sustained by authority and has frequently been cited with approval. It appears from the correspondence put in evidence, that it was the regular practice of George, whenever he made a loan, to send to the plaintiff for the money, and when the transaction was consummated to send her the bond and policy of insurance, and the mortgage when recorded. The only instances in which he appears to have collected principal with her knowledge or sanction, occurred in 1869, 1870 and 1871, when it appears from written statements rendered by him to plaintiff, that he received the principal of certain mortgages and reinvested the proceeds in other mortgages, and in 1873, she sent him a mortgage for collection. These transactions having occurred long after the payment made by McKinney are not evidence of apparent authority on which

he was authorized to rely, but are only available, if at all, as evidence of actual authority, and their force in this respect depends upon the circumstances under which the payments were made. If, in these instances, the plaintiff placed the securities in his possession, or delivered satisfaction-pieces to him prior to his receiving the money, or otherwise expressly empowered him to collect the principal, they would afford no evidence of an actual general authority to collect mortgages not placed in his hands, or which he was not otherwise expressly authorized to collect, the question being one of actual authority and not apparent authority, by which the defendant's course was influenced. There is no evidence that George was not intrusted with the possession of the mortgages thus collected, or of satisfaction-pieces thereof, nor any evidence of the circumstances, except the testimony of the plaintiff herself, who testified that she never verbally or in writing gave to George any express authority to collect the principal of her mortgages generally, or at any time gave him authority to collect money for her generally. That mortgages were never paid to him, to her knowledge, by any person without her express authority and consent, and that the mortgages paid by her authority were satisfied of record by satisfaction-pieces signed by her for that specific purpose. This evidence was uncontroverted.

It is very questionable, whether evidence that in 1869 and subsequently, the plaintiff recognized payments to George of principal of mortgages not placed in his hands for collection, disconnected with any prior acts of the same description, was competent for the purpose of establishing an actual authority to make similar collections in 1867. The defendant's counsel rely upon the case of *Olcott* v. *The Tioga Railroad Company* (27 N. Y., 546) as an authority for the admission of such evidence; but that was a different case. The question was as to the authority of the president of a railroad company to sign obligations for the price of locomotives furnished to the road. The evidence was, that during a period of three years, the president had been allowed to purchase locomotives and

give bills for them, and he afterward rendered accounts to the board of directors embracing payments of these bills, and for several years they did not question these accounts. The admission of evidence of the ratification of such of the payments as were made subsequently to the transaction in dispute was excepted to, and the court, in overruling that exception, say, the proof related to a continuous series of acts embracing the time of the act in controversy, and was all of it competent as bearing upon the authority to perform this act. This does not fully sustain the proposition, that if the acts ratified had begun, say in 1869, this would have been evidence that similar acts done in 1867 and never ratified, were authorized.

But there are settled principles specially applicable to cases like the present, which render immaterial much of the inquiry in relation to implied authority. These are collated in Dunlap's Paley on Agency (p. 274), as follows, and seem fully to cover this branch of the case.

If money be due on a written security, it is the duty of the debtor, if he pay to an agent, to see that the person to whom he pays it is in possession of the security. For though the money may have been advanced through the medium of the agent, yet, if the security do not remain in his possession, a payment to him will not discharge the debtor. (*Henn* v. *Conisby*, 1 Ch. Cas., 93, note.) And even the agent being usually employed in the receipt of money, does not *in this instance* constitute such authority as will serve the debtor. It has been so held in respect to money paid upon a bond to one who usually received money for the obligee, but who had not the custody of the bond in question (*Gerard* v. *Baker*, 1 Ch. Cas., 94), and even where the obligor had for several years paid the interest and part of the principal to an agent of the lender through whom the money had been borrowed, who had not the possession of the bond, but had regularly paid the money over to the obligee except the last payment, the obligor was adjudged to pay the last sum over again. For it was held, notwithstanding the hardship of the

case, that the circumstance of the agent's having before received the interest and part of the principal, did not imply that he had any authority to receive it, but as long as he paid it over all was well, and any other might have carried it to the creditor as well as he. (*Wostenholme* v. *Davies*, 2 Freem. Ch. R., 289.) In this case, the master of the rolls said, that it was the constant rule of that court, that if the party to whom the security was made, trusted the security in the hands of the scrivener, payment to the scrivener was good payment, but if he took the security into his own keeping, payment to the scrivener would not be good payment, unless it could be proved that the scrivener had authority from the party to receive it, and that such authority could not be implied from the fact that the scrivener had previously received principal which he had paid over to the obligor. (See, also, Story on Agency, § 98, 104; *Curtis* v. *Drought*, 1 Molloy, 487).

These principles were applied in the case of *Williams* v. *Walker*, before cited, and although payments of principal had been made to the attorney while he had the bond and mortgage in his possession, and these payments were allowed, subsequent payments made to the same attorney when the bond and mortgage were not in his possession were disallowed, and it was held not to be incumbent upon the creditor to show notice to the debtor, of the withdrawal of the papers from the possession of the attorney, but that it was the duty of the party paying, on each occasion, to require the production of the bond.

It is clearly established, that in the present case, the securities were not confided to the attorney, but were in the plaintiff's possession at the time of the payment, and that McKinney paid without requiring their production. The case is much stronger than any of those cited, for it appears here, that George was, at the time, the attorney of McKinney, the receipts which he gave were not signed in the name of the plaintiff, and McKinney trusted to the promise of George to get the papers. And what was said in *Henn* v.

*Conisby* (1 Ch. Ca., 93), is peculiarly applicable. "The circumstance of the creditor keeping the security is conclusive. No man would pay the money due on a mortgage or bond without having the security given up. The debtor's payment to the scrivener without taking up his security, was an evidence that he trusted the scrivener more than the creditor did, who always kept the security."

Any other principle would be dangerous in the extreme. If the fact, that a capitalist makes investments on bond and mortgage through an attorney, and employs him to collect the interest, and in special cases authorizes him to collect the principal of particular mortgages, is sufficient to warrant a finding of a general authority to collect the principal of all the mortgages of the client, notwithstanding, that the client takes the precaution to retain his securities in his own possession, no investor would be safe. Therefore, the rule has, in the adjudicated cases, been strictly adhered to, that the possession of the securities by the attorney, is the indispensable evidence of his authority to collect the principal (1 Molloy, 487), and that whoever pays him without that evidence does so at his own risk, unless he can prove express authority *aliunde*, and that the fact that the agent has, on other occasions, received principal which he has paid over to his client is not, in this instance, proof of such authority.

In regard to the $2,400 mortgage, this case presents the further feature, that at the time of the payment, the mortgage had still four years to run. No authority to change the terms of the contract can be implied from the fact that it was originally made through the attorney, and there is no evidence in this case of any such authority. Even though an agent have authority to receive payment of an obligation, this does not authorize him to receive it before it is due. (*Campbell* v. *Hassel*, 1 Stark., 185; *Parnther* v. *Gaitskell*, 13 East, 437, 438; Story on Agency, § 98; 50 N. Y., 415; 39 N. Y., 121, 122; 2 Greenlf. Ev., § 65.)

For all these reasons we are of opinion, that the finding that George had authority to receive the principal of the

mortgages cannot be sustained, and that unless a ratification of the payment can be made out the defence must fail.

The first element necessary to render a ratification effectual · is, that it be made with a full knowledge of all the material facts. (*Owing* v. *Hull*, 9 Peters, 629 ; *Baldwin* v. *Burrows*, 47 N. Y., 212, and cases cited.) The plaintiff, at the time of receiving the securities proposed to be transferred to her by George's letter of March 13, 1874, appears to have had very little knowledge of the transactions which she is alleged to have ratified. The judge has found that she knew the fact that the McKinney mortgages had been paid, and there is some evidence to support that finding. But there is no evidence that she knew when the mortgages were paid — that it was the first payment of principal made to George — that the mortgages were paid before she had ever authorized George to receive the principal of any of her mortgages, and before any thing had occurred, from which it could be pretended that there was any appearance of authority to receive the principal of her mortgages ; — that George was at the time the attorney of McKinney ; — that the receipts had not been given in her name — and as to the $2,400, the decisive fact, that it had been paid four years before it became due. She seems to have been ignorant of these material facts, the knowledge of which, might, and it may be presumed, would, have prevented her even from apprehending that she was bound by the payment. If made under the erroneous impression, that she was bound, produced by the ignorance of these facts, her ratification, if she made one, would have no effect. It does not appear, that the conduct of McKinney, was in any manner influenced by her receiving the securities from George. There can be no pretence of estoppel, and the fact is found, that the supposed securities proved wholly worthless. Furthermore she testified that at the time George proposed to transfer these securities to her she had no knowledge of the extent of her probable losses by reason of her transactions with him, and when asked whether she knew why she might be subject to loss by reason of them, the

testimony was excluded and exception taken. The only evidence in the case, to show for what these securities were taken, and upon which the judge has found that they were taken to secure her for the moneys which he had collected on these mortgages, is the letter of George, in which he states that the mortgages not therein named as untouched had been paid, and offers to transfer to her these securities, and the testimony of Mr. Scott, who as attorney for the plaintiff procured the transfers. The transfers are not printed in the case, and it does not appear that they showed for what purpose they were given. The letter may be construed as proposing to secure the plaintiff for the moneys collected on her mortgages, but the evidence does not show an acceptance of that proposition. It appears that the plaintiff had other claims against George, and her attorney, Mr. Scott, the only witness who testifies upon the subject, states that the transfers from George were obtained by him and were taken as security to the plaintiff, for mortgages which he had passed over to her, representing them to be good, which were worthless. This testimony is not controverted. The plaintiff had testified that she had taken out a few of her mortgages on learning of George's dishonesty and had them examined, and ascertained that three of them were fraudulent papers entirely. The defendant's counsel objected to evidence of the nature of the securities and moved to strike out this testimony. The motion was granted and exception taken. Mr. Scott testified to various fraudulent transactions of George, other than receiving payments for the plaintiff under an assumption of authority from her; from which other fraudulent transactions the plaintiff had sustained a heavy loss. We think that a finding of ratification could not be sustained. The judge has not found a ratification, but it is claimed, that the receipt of these securities from George is evidence from which original authority can be inferred. The same reasons which show that their receipt did not amount to a ratification, shows that it is not evidence of original authority. If received in ignorance of the facts, or for some other purpose

than as security for the proceeds of these mortgages, the receipt of them imports no admission that the collections were authorized.

The plaintiff seems to be entirely free from fault. She took her bonds and mortgages into her own custody and retained them, and had a right to rely upon the rule of law, that although she might allow her attorney to collect the interest, he would have no power to collect the principal without special authority, so long as she did not intrust him with the papers. McKinney seems to have confided in George, who was also his attorney, and to have been willing to place the money in his hands, trusting to his promise to get the papers; and without inquiry into his authority, or any ostensible authority, seems to have reposed for years upon the promise of George, without inquiring whether the papers had been obtained or the mortgages satisfied, or calling upon the plaintiff to satisfy them. One of the parties must suffer from the fraud of George, and we think, that on the facts now before us, the loss has resulted from the negligence of McKinney, or from his confidence in George, and not from any appearance of authority conferred upon him by the plaintiff, by which the defendant was misled.

The judgment must be reversed and a new trial ordered, with costs to abide the event.

All concur except CHURCH, Ch. J., dissenting.

Judgment reversed.