MARY ROSS POTTER, as Administratrix, Plaintiff, *v.* ALBERT E. SAGER et al., Defendants.

(Supreme Court, Monroe Equity Term, December, 1916.)

Principal and agent — agency —principal bound by action of agent — what constitutes payment — Negotiable Instruments Law, § 148.

While discretionary action by an agent appointed to collect principal of a trust estate may not be delegated, yet, where his principal accepts money collected through the action of the agent in attempting to delegate his power, he is bound by such ratification.

Where an agent appointed to collect rents, interest and the principal of mortgages, so acts for a time, the mortgagors are justified in their payments to him of interest and principal.

Such an agent, however, may not accept payment in anything other than money, and the delivery to him of a check or other substitute for money does not constitute a payment and only becomes so when accepted as such and in due course actually paid.

The words " when accepted as such and in due course actually paid" must be construed, as declared in section 148 of the Negotiable Instruments Law, to be a payment where it is made at or after maturity of the instrument to the holder thereof in good faith and without notice that his title is defective.

Where checks of mortgagors for interest and principal were drawn not to the mortgagee or to an agent to collect as such but to him as an individual and he converts the proceeds to his own use there was no payment.

MOTION to amend complaint.

S. D. Bentley, for plaintiff.

R. L. Saunders (Hiram R. Wood, of counsel), for defendants.

SAWYER, J. From about the time of her appointment as administratrix until shortly before the commencement of this action plaintiff intrusted the management of her trust estate very largely to her husband, J. Forbes Potter, he however consulting with and adopting her suggestions in matters deemed of importance. Mr. and Mrs. Potter were residents of the city of New York, while the property of the estate, which consisted of real estate, mortgage securities and money in bank, was located in the city of Rochester. In the spring of 1900 Mr. Potter, apparently as a matter of convenience and to save the time and expense incident to otherwise necessarily frequent trips between New York and Rochester, appointed the witness Byron N. Sherwood as Mrs. Potter's local representative in Rochester, authorizing and empowering him to, in her behalf, collect the rents and interest moneys belonging to the estate as same became due. This appointment was made without consultation with Mrs. Potter, but Mr. Sherwood continued to act there-

under until the spring of 1914 and under circumstances which preclude any denial by Mrs. Potter of knowledge as to him or his business relations with the Morley estate, and which in law conclusively charge her with having adopted and ratified his appointment as her local agent. In the course of his agency Mr. Sherwood not only did the things for which he had received specific authority, but assumed to and did collect on many occasions the principal of mortgages belonging to the estate, properly depositing such moneys in plaintiff's bank account and reporting same to her in connection with his reports of his other activities. The fact that such collections of principal came to plaintiff's knowledge is fully established, and the case is bare of any proof that she made objection thereto or forbade future collections of principal by Mr. Sherwood. From the evidence as a whole it is apparent that in July, 1913, and continuously thereafter to and including the month of January, 1914, both plaintiff and Mr. Sherwood understood that he was authorized to collect in her behalf such moneys as might become due to her, whether same consisted of rents, principal or interest, and that he was in fact her agent therefor.

I am not unmindful of plaintiff's argument that the collection of principal might involve discretionary action, and if confided to Mr. Potter could not be by him delegated. There can be no question but that such is the rule, but it does not seem to be here presented for discussion, inasmuch as Mr. Sherwood's authority in that regard is predicated on plaintiff's adoption and ratification of the collections, authority for which he originally assumed. Among other assets of the estate is a certain bond and mortgage executed by these defendants upon the 29th day of May, 1911, and the interest upon which became due beginning with July,

1911. Checks for its interest as same fell due were given by defendant to Mr. Sherwood and there was likewise made to him two payments of $1,000 each which defendants desired to make upon the principal sum of the obligation. The proceeds of all the checks so received by him save two were deposited by Mr. Sherwood to plaintiff's credit in her proper bank account.

The check of July 9, 1913, for $75, claimed as a payment of interest then due, and that of July 15, 1914, for $1,075, claimed as a payment of $75 of interest then due, together with $1,000 on account of principal, were, however, cashed by Mr. Sherwood and their proceeds by him appropriated to his own use. That defendants were justified in making to Mr. Sherwood, as such agent, payments of both principal and interest upon the debt owing plaintiff, necessarily follows from what has been heretofore said. An agent authorized to collect his principal's debt is, however, under the restraint of well settled rules of law, with knowledge of which these defendants are charged, and among them is that which forbids such an agent to accept payment in any thing other than money (*Burstein* v. *Sullivan*, 134 App. Div. 623–625; *Fellows* v. *Northrup*, 39 N. Y. 117–121; *Doubleday* v. *Kress*, 50 id. 410–415), and the delivery to an agent of a check or other substitute for money does not constitute a payment and only becomes so when accepted as such and in due course actually paid. *Bernheimer* v. *Herrman*, 44 Hun, 110; *Burstein* v. *Sullivan, supra; Hunter* v. *Wetsell*, 84 N. Y. 549.

The language " when accepted as such and in due course actually paid," used in *Hunter* v. *Wetsell, supra,* must be construed as declared in section 148 of the Negotiable Instruments Law which provides: " Payment is made in due course when it is made at or after maturity of the instrument to the

holder thereof in good faith and *without notice that his title is defective.*" All the cases wherein the effect of the delivery of a check, or other substitute for money to an agent, has been discussed, so far as I am able to ascertain, are those in which the check was made payable either to the principal, or to the agent as such, and involve either a forged indorsement or a misappropriation after actual payment to the agent in his trust capacity.

That under consideration presents an entirely novel feature in that the debtor delivered, in attempted payment, checks drawn not to plaintiff, or to the agent as such, but to Mr. Sherwood individually. " There is nothing upon them indicating that any one except the person named therein as the payee and those to whom he and succeeding indorsers made them payable had any interest in or connection with them." I do not see that the situation is bettered by the evidence as to whom or the purpose the money was intended for; that does not affect the question whether or not the delivery of the checks to Mr. Sherwood did in fact and in law effect payments upon the plaintiff's mortgage; because, even though Sherwood had authority to make collections of interest and principal of the mortgage he had no authority to accept therefor any thing but money. This he did not receive, either from the hands of defendants, or by the payment to him in due course of defendants' checks issued to him in his capacity as agent. The legal restrictions concerning dealings with agents are founded upon substantial reasons, and neither ignorance of the law nor *bona fide* intention will avoid the disability incurred by their violation. The most that can be said is, that by dealing with him as an individual instead of as plaintiff's agent defendants constituted Mr. Sherwood their messenger for the

transmission of the amount of the checks to plaintiff; in so far as the moneys so sent were actually received by her she must give defendants credit, and further than this she need not go. Under the checks as drawn the drawer paid their amount to Mr. Sherwood as an individual, and its reception by him was not a payment of defendant's indebtedness either in money or by check received as such and paid in due course. It may be said that such construction results in hardship for defendants, but the sufficient answer is that, where as here the loss must fall upon either one or the other of parties whose equal good faith is beyond dispute, their respective rights can only be adjudged by a strict construction of the law — this is but equity.

Plaintiff's motion to so amend his complaint to conform with the proofs is granted, and a decree foreclosing the mortgage and adjudging that there is unpaid thereon $3,000 of principal with interest at five per cent per annum, from January 1, 1913, less $50 paid July 16, 1914, and containing the usual provisions for a sale of the mortgaged premises by a referee to be appointed by the court, is directed.

Ordered accordingly.