LEWIS V. CRANE, Respondent, *v.* GEORGE GRUENEWALD et al., Appellants.

While a mortgagor who makes a payment to one, other than the mortgagee, does so at his own peril, and if the payment be denied, the burden rests upon him of proving that it was made to one clothed with authority, actual or apparent, to receive it, if he can show that payment was made to one having apparent authority, the payment will be treated as if actual authority had been given.

Where a mortgagee permits an attorney, who negotiated a loan for him, to retain possession of the bond and mortgage after the principal is due, and the mortgagor with knowledge of that fact, and relying upon the authority thus afforded, makes a payment to him, the owner will not be permitted to deny that the attorney possessed the authority which the presence of the securities indicated.

The mortgagor, however, must have knowledge of the fact, and while it is not necessary that he should actually see and examine the securities, if he have trustworthy information which he believes and relies upon, and which proves to have been true, he must have knowledge at the time every payment is made, as no presumption of a continuance of possession can be indulged in.

In an action to foreclose a mortgage, it appeared that it was given to secure a loan negotiated through one B., an attorney in whose possession the mortgage and accompanying bond were permitted to remain, with authority to collect the interest, but not the principal. After the principal became due, B. received from defendant G. the mortgagor, two payments of $1,000 each, to apply on the principal, on each occasion the bond and mortgage being produced. Subsequently, B. received from G. $1,000, to be applied upon the principal; the bond and mortgage were not exhibited, but B. stated that they were in his possession, which was the fact. B. subsequently sold the bond and mortgage, and delivered them with a forged assignment to the purchaser. After that, G. paid to B. the remainder of the principal. *Held,* that G. was entitled to be credited with the $3,000; but *held* (POTTER, J., dissenting), that plaintiff was entitled to a judgment of foreclosure for the balance of the mortgage.

(Argued March 7, 1890; decided April 22, 1890.)

APPEAL from judgment of the General Term of the Supreme Court in the first judicial department, entered upon an order made May 13, 1887, which affirmed a judgment in favor of plaintiff entered upon a decision of the court on trial at Special Term.

Mary S. Crane, through an attorney named Baker, loaned to the defendant $8,000 on bond and mortgage. The papers bear date December 2, 1875, and were made payable with annual interest on December 2, 1880. These securities were left in the custody of Baker, who had authority to receive the interest, but was never authorized to collect any part of the principal. After the principal became due and payable the defendant asked the attorney Baker to reduce the rate of interest from seven to five per cent. Baker consented on condition that the defendant would make payments on account of the principal to the amount of $3,000. The defendant shortly thereafter made two payments of $1,000 each at the office of Baker, who, at the time, not only gave a receipt for the money, but also exhibited to him the bond and mortgage. The third payment of $1,000 was not made in Baker's office, and the defendant did not at that time see the bond and mortgage, but was informed by Baker that it was still in his possession, and such was the fact. Subsequently, and before the defendant made further payments on account of the principal, Baker sold the bond and mortgage for $8,000 to one Mount, and delivered them to him, together with a forged assignment of the bond and mortgage. This defendant continued to pay Baker install-ments on account of the principal until the entire sum was paid, Baker informing him that he still had the bond and mortgage in his possession. This was not true at any time during the period within which the defendant paid the last $5,000 on account of the principal. Mrs. Crane subsequently obtained the possession of the bond and mortgage, and this plaintiff, for her, commenced an action of foreclosure.

The trial court, after finding in substance the foregoing facts, held that the defendant was entitled to be credited upon the bond and mortgage with the first two payments of $1,000 each, and as to the remaining $6,000, with interest, rendered a judgment of foreclosure and sale.

*Gibson Putzel* for appellant. The entrusting of the bond and mortgage by the mortgagee with the attorney who effected

and had charge of the loan is, if unqualified by other instructions, conclusive proof to establish .that the agent had actual authority from his principal to collect the principal as well as the interest due on the bond and mortgage. ( *Williams* v. *Walker,* 2 Sandf. 325 ; *Clyde* v. *Duncan,* 25 E. & L. 23 ; *Henn* v. *Conisby,* 1 Ch. Cas. 93 ; *Gerard* v. *Baker,* Id. 94 ; *Roberts* v. *Matthews,* 1 Vern. 150 ; *Woestenholm* v. *Davies,* Freem. Ch. 289 ; *Duchess of Cleveland* v. *Dashwood,* Id. 249 ; *Curtis* v. *Drought,* 1 Moll. 487 ; *Penn* v. *Browne,* Freem. Ch. 214 ; *Whitlock* v. *Waltham,* 1 Salk. 157.) Where the scrivener who put out the money for his principal is entrusted with the custody of the bond and mortgage, a payment to him by the mortgagor is valid. ( *Whitlock* v. *Waltham,* 1 Salk. 157 ; Story on Agency, chap. 4, §§ 57, 84, 97, 98 ; *Wilkinson* v. *Caudlish,* 19 L. J. [N. S.] 166 ; *Smith* v. *Kidd,* 68 N. Y. 130 ; *Henn* v. *Conisby,* 1 Ch. Cas. 93 ; *Gerard* v. *Baker,* Id. 94 ; *Woestenholm* v. *Davies,* Freem. Ch. 289.) The question of authority must be determined exclusively upon the acts of the mortgagee. ( *Van Keuren* v. *Corkins,* 66 N. Y. 80 ; *Brewster* v. *Carnes,* 103 id. 556.) The court erred in refusing to give the defendant credit for the third payment of $1,000. ( *Doubleday* v. *Kress,* 50 N. Y. 410.) In the absence of proof that the agent was, in express words, or in any words, authorized by the principal to do an act, actual authority to do such act may, nevertheless, be inferred from the course of dealing, the transactions had, and the relations existing between the principal and agent. ( *Dunn* v. *Hornbeck,* 72 N. Y. 84 ; *Sweltzer* v. *French,* 2 Cush. 309 ; *Security Co.* v. *Richardson,* 33 Fed. R. 16 ; *Kent* v. *Congdon,* Id. 228 ; *Wilcox* v. *Carr,* 37 id. 130.) Where the judge refuses to find a fact proved by uncontroverted evidence, it is a legal error which is available in the Court of Appeals. ( *Sheldon* v. *Sheldon,* 51 N. Y. 354 ; *Draper* v. *Stouvenal,* 38 id. 219 ; *Fellows* v. *Northrup,* 39 id. 117 ; *Mason* v. *Lord,* 40 id. 476.) A judgment will be reversed where the exclusion of evidence or the refusal to find uncontroverted facts tended to injure or prejudice the appellant's cause. ( *People* v. *Gonzalez,* 35 N. Y. 59 ; *For-*

rest v. *Forrest*, 25 id. 510 ; *McGean* v. *M. R. Co.*, 117 id.
219.)

*Joseph F. Stier* for respondent.   Defendant failed to show
that Baker had actual or general authority to receive the whole
or any part of the principal.   Apparent authority is not suffi-
cient, unless there was actual possession and production of the
bond and mortgage by Baker when the payments respectively
were made to him ; and such apparent authority can only be
relied on when there has been an actual production at the time
of payment ; and it is incumbent upon defendant to prove
affirmatively such production.   (*Smith* v. *Kidd*, 68 N. Y. 130 ;
*Williams* v. *Walker*, 2  Sandf. Ch. 325 ; *Doubleday* v. *Kress*,
50 N. Y. 410 ;  *Clark* v. *Iglestrom*, 51 How. Pr. 407 ; Paley
on Agency, 274 ; Story on  Agency, §§ 98, 104 ; 2 Jones on
Mort. § 964.)   It was defendant's duty on each occasion, when
he paid principal, to require the production of his bond, and,
upon making the final payment, to require the surrender of
his bond and mortgage.   (*Belden* v. *Meeker*, 47 N. Y. 307 ;
50 id. 415.)   The legal title to the bond and mortgage in suit
being in Lewis B. Crane, the action is properly brought in his
name as the party plaintiff.   (*Schaefer* v. *Henkel*, 75 N. Y.
384 ; *Morris* v. *Tuthill*, 72 id. 577.)

PARKER, J.   A mortgagor who makes a payment to one,
other than the mortgagee, does so at his peril.  If the pay-
ment be denied, upon him rests the burden of proving that
it was paid to one clothed with authority to receive it.   There
is, however, one exception to this general rule.   If payment
be made to one having apparent authority to receive the money,
it will be treated as if actual authority had been given for its
receipt.   (Paley on Agency [3d ed.], 275 ; Story on Agency,
§ 98 ; *Williams* v. *Walker*, 2 Sandf. Ch. 325 ; *Smith* v. *Kidd*,
68 N. Y. 130 ; *Brewster* v. *Carnes*, 103 id. 556–564.)

So, if a mortgagee permits an attorney, who negotiates a
loan, to retain in his possession the bond and mortgage after
the principal is due, and the mortgagor, with knowledge of

that fact, and relying upon the apparent authority thus afforded, shall make a payment to him, the owner will not be permitted to deny that the attorney possessed the authority which the presence of the securities indicated that he had. This rule comprises two elements: First, possession of the securities by the attorney with the consent of the mortgagee; and second, knowledge of such possession on the part of the mortgagor. The mere possession of the securities by the attorney is not sufficient. The mortgagor must have knowledge of the fact. It would not avail him to prove that subsequent to a payment he discovered that the securities were in the actual custody of the attorney when it was made. For he could not have been misled or deceived by a fact, the existence of which was unknown to him. It is the information which he acquires of the possession which apprises him that the attorney has apparent authority to act for the principal. It is the appearance of authority to collect, furnished by the custody of the securities, which justifies him in making payment. And it is because the mortgagor acts in reliance upon such appearance, an appearance made possible only by the act of the mortgagee in leaving the securities in the hands of an attorney that estops the owner from denying the existence of authority in the attorney which such possession indicates.

Now, applying that rule to the facts found by the learned trial court in this case, the attorney Baker negotiated the loan of $8,000, which was made to this defendant on his bond secured by a mortgage on real estate. The mortgagor and mortgagee never saw each other. The securities were permitted to remain in the possession of the attorney. He had authority to collect the interest, but was not authorized to collect the principal or any part of it. After the principal became due he received from the mortgagor two payments of $1,000 each, on each occasion exhibiting the bond and mortgage to the mortgagor. Clearly as to these two items the attorney had apparent authority to receive the principal and the mortgagor could not deny to them the effect of payment *pro tanto* by proof that he did not have

actual authority. Subsequently, and while the bond and mortgage still remained in the possession of the attorney, this defendant paid to him a further sum of $1,000, to be applied as a payment on account of the principal due. True, he did not at this time see the bond and mortgage but it was actually in the possession of the attorney and the attorney so informed him. Here then was possession and information of possession. It was information upon which he acted, and inasmuch as it was true, it constituted apparent authority. If it had turned out to be untrue it could not have availed the defendant. We see no ground for insisting that a party must actually see and examine the securities in order to entitle him to the protection of the doctrine of apparent authority, if he have trustworthy information of the fact which he believes and relies upon and it shall prove to be true there seems to be no reason why it should not avail him as well as a personal examination of the securities. It follows, that the defendant should have been credited with the third payment of $1,000. The remaining $5,000, was paid to Baker after he had parted with the possession of the bond and mortgage and the question presented is, whether the defendant is entitled to be credited with the payments made by him while the attorney Baker did not have actual possession of the securities. It will be observed that Baker was not deprived of the possession by any act of Mrs. Crane. She believed that they were still in the custody of Baker. So far as she is concerned, therefore, or the plaintiff in this action who occupies no better or other attitude, she is not in position to deny such responsibility as her conduct imposes. She cannot say that by any act of hers she is relieved from the operation of the estoppel which prevents her from denying that the first three payments of $1,000 each were effectual as such. If then the defendant is not entitled to be credited with the payments aggregating $5,000, it is because he is not in a situation to insist upon the estoppel. We are of the opinion that a proper application of this doctrine of

apparent authority, requires us to hold that the defendant's failure to take the precaution of ascertaining whether the attorney was actually in the possession of the securities when he paid the several sums aggregating $5,000, deprives him of the right to assert that he was induced to make the payments because it appeared to him that the attorney had the right to receive the money. For, as we have already observed, it cannot appear to the mortgagor that an attorney has authority to receive the principal, save where he has present possession of the securities.

Information of the physical fact of possession by the attorney is alone effectual for protection. And he must have such knowledge when every payment is made, for no presumption of a continuance of possession can be indulged in for the purpose of giving support to an apparent authority on the part of an attorney to act, where no actual authority exists. This knowledge he did not have, for it was not the fact. By his own wrongful act, the attorney had parted with possession, and as a necessary consequence has deprived himself of the power to longer misrepresent his authority in respect thereto to the detriment of the mortgagee. The mortgagor thereafter placed his trust solely in the assertions of the attorney and was deceived. In so doing he was legally as much at fault as the mortgagee, who also relied upon the attorney's trustworthiness. Therefore, he cannot invoke in support of his contention the doctrine of apparent authority. A rule which undoubtedly had its foundation in the equitable principle, that if one of two innocent persons must suffer, he ought to suffer in preference whose conduct has misled the confidence of the other into an unwary act.

The judgment should be reversed and a new trial granted with costs to the appellant; unless within thirty days the plaintiff stipulates to modify the judgment by deducting therefrom, $104.50, that being the amount of the costs of General Term, and the further sum of $1,000, with interest thereon from July 1, 1882, to the date of entry of the

judgment together with any other sum paid by Gruenewald to Baker whether for principal or interest prior to July 20, 1883, for which he was not credited by the trial court; in which event the judgment as modified is affirmed with costs of this court to the appellant.

Potter, J. (dissenting). I concur with my brethren that the third $1,000 of principal and interest paid upon it should be allowed to the defendant, but I am constrained to hold that the mortgage has been fully and legally paid.

The principle involved in this class of cases is a mere question of authority to receive payment of principal or interest or both. It is held to be sufficient evidence of authority if the attorney who negotiated the loan is subsequently *entrusted* by the creditor with the possession of the bond and mortgage. (*Doubleday* v. *Kress*, 50 N. Y. 413.)

It can make no difference whether the debtor *sees* the bond and mortgage when he makes the payment.

Hence, it is that a payment made at any time while the bond and mortgage are in the agent's possession, with the consent of the obligee, is evidence of the authority conferred by the obligee to receive payment. The authority to receive arises, in such case, from the permission of the creditor to let this evidence of authority remain with the alleged agent. The authority to receive payment consists in leaving the bond and mortgage in the possession of the receiver, and not at all in the fact of being seen in the receiver's possession by the obligor. (*Hatfield* v. *Reynolds*, 34 Barb. 614.) It is a species of a power of attorney. Such being its character, it must remain in force and operative until the creditor revokes this authority by withdrawing the bond and mortgage from the possession of the receiver or alleged agent. (*Smith* v. *Kidd*, 68 N. Y. 137.) The trial court found that Mrs. Crane did not know of the delivery of the bond and mortgage to Mount, but believed and intended that the bond and mortgage should remain in Baker's possession from the period of its execution to the 4th of August, 1884, nine years or more. Mrs. Crane

herself testified that, "Q. During these three years or so that Baker told you that Gruenewald was delinquent in the payment of these interest moneys, what answer did you make to him? A. I was indignant about it, and asked him why he did not foreclose the mortgage, and he would say it would cost me too much money; then, again, he would tell me that Mr. Henry R. Mount would buy the mortgage of me; this was in January, 1884. Q. Did you not tell him to foreclose the mortgage? A. I did not; but asked him why he did not foreclose. Q. Then what did you mean by asking him why he did not foreclose the mortgage? A. I wanted the money; I, that is — I wanted the principal if I could not get the interest." Baker wrote to Mrs. Crane: "I shall commence foreclosure proceedings to-day." "Q. From all these letters, Exhibits 1 to 8, and C and D, you understood that Baker was making efforts to get Gruenewald to pay off the principal of this mortgage? A. I supposed he was."

This finding by the trial court shows that Mrs. Crane intended that the bond and mortgage should remain with Baker (which, as we have seen, was sufficient evidence of his authority to receive payment), but this evidence is confirmed and strengthened by her evidence to the effect that she knew Baker was collecting and trying to collect the interest and principal, and even by a resort to foreclosure, of this bond and mortgage through this long period. As before stated, it is simply a question of Baker's authority to receive payments upon the bond and mortgage, and, while the possession of the bond and mortgage is sufficient evidence of such authority, it by no means precludes other evidence of such authority, either in connection with the fact of possession of the bond and mortgage or independently of such possession. (*Hatfield* v. *Reynolds, supra,* p. 614.) "The authority is implied from the possession of the papers and the continued receipt of money upon them, which are facts, and not from the exhibition of the papers by the agent, which is only evidence of the fact;" and, it might be added, *to the obligor.*

Hence, I feel constrained to hold that the exclusion of any

evidence which tended to prove that Baker had actual authority to receive payments and quite aside from the authority to do so arising from the possession of the bond and mortgage, was erroneous.

It was held in *Dunn* v. *Hornbeck* (72 N. Y. 81), where the plaintiff, as in this case, had testified she had never authorized the agent to receive the principal, that it was proper to contradict or overcome such testimony by showing that the agent always did her business; that he received the moneys paid for her, etc.

Under this authority the learned trial judge erroneously excluded the answers to the following questions: " Q. Did you ever hear any name mentioned with regard to the ownership of your mortgage other than John Willard?" " Q. You paid the interest on your mortgage to Baker?" " Q. Baker wrote you that he was making efforts to get Gruenewald to pay off this principal; what did you, in conversation, say to him with regard to the matter?" " Q. Was this mortgage on the avenue B property existing at the time John R. Crane arrived at age?" " Q. What other business did George A. Baker, Jr., have for you in 1875-6-7, besides investment of these mortgages?"

She never withdrew the possession of the bond and mortgage from Baker, or in any way limited or restricted his authority to be implied from such possession and his general authority to act in her business and especially in respect to Baker's authority in relation to the four other mortgages negotiated by Baker at the same time out of the $30,000 which Baker loaned for the plaintiff. The forged assignment and the retention of a simulated copy of it to deceive the defendant with, signify nothing in respect to the payments made by defendant. Baker was authorized by plaintiff to receive such payment and such authority was continued until it was in some manner revoked. During such period a payment to Baker was a payment to plaintiff and the forging of an assignment of the bond and mortgage could not affect the authority conferred upon him. Until his authority was revoked, Baker was the agent to receive payment. He was her agent, and in no sense the

agent of the defendant, and she should lose by the unfaith-fulness of her agent rather than that the defendant should.

1 am in favor of a total reversal of the judgment and the award of a new trial.

All concur with PARKER, J., except POTTER, J., dissenting. Judgment accordingly.