Lawson v. Carson.

MALVINA LAWSON et al.

*v.*

ISAAC CARSON et al.

A mortgagor is warranted in paying the debt to the conveyancer who negotiated the loan, who had been authorized by the mortgagee to receive the interest, and had received it repeatedly, and who produced and surrendered the bond and mortgage when the mortgagor desired to pay them off, though he had in fact no authority to receive such payment, and though such bond and mortgage had been intrusted to him by the mortgagee for safe-keeping only, wrapped up in a bundle with other papers, without informing him of the contents of the package, and without giving him any power of disposal over it; and the loss arising from the conveyancer's failure to pay over the amount to the mortgagee must fall, not on the mortgagor or his vendee, who bought under a contract obligating the mortgagor to discharge the mortgage, but on the mortgagee, whose conduct rendered possible the fraud of the conveyancer.

On bill, answers and proofs.

*Messrs. Bergen & Bergen* (*Mr. John B. Uhle*, of the Philadelphia bar, with them), for the complainants.

*Mr. Peter L. Voorhees*, for the defendants.

GREEN, V. C.

On the 22d day of December, 1868, Samuel A. Cook and John A. Cook, being indebted to Mary L. Lawson in the sum of $3,000, gave her their bond, secured by a mortgage of even date therewith, upon certain property in the county of Camden,

said bond being payable in one year, with interest at the rate of six per cent., payable semi-annually.

Miss Lawson, being about to marry Henry Phelps Birckhead, joined with him in a deed of marriage settlement of her estate of all kinds (in which was included the said bond and mortgage) to Malvina Lawson, in trust for the said Mary L. Lawson.

On February 8th, 1866, the land became vested in fee in John A. Cook, subject to the said mortgage.

On December 12th, 1866, John A. Cook and wife conveyed the land, subject to the mortgage, to Mary Carson.

Mary Carson, on the 14th of December, 1872, under the provisions of the laws of this state, made and executed for the equal benefit of her creditors a deed of assignment of all her estate, including the tract of land and premises described in the said mortgage, to Isaac Carson, assignee.

On March 20th, 1873, Isaac Carson, the assignee, sold and conveyed the premises to one Joseph W. Nicholson. The sale by Carson, assignee, to Nicholson of the premises, was free and clear from the encumbrance of the said mortgage, and Nicholson paid the whole of the purchase money, $4,545.96, to Carson. Joseph W. Nicholson afterwards departed this life, having devised the premises to William C. Nicholson.

The bill charges that the mortgage came into the possession of one Charles Leslie, of the city of Philadelphia, by fraud and without the knowledge or consent of Malvina Lawson, the trustee, or Mary L. Birckhead, the *cestui que trust*, or either of them; that Charles Leslie, on or about the 21st day of March, 1873, in collusion with Isaac Carson and Joseph W. Nicholson, procured the said mortgage to be canceled of record without the knowledge or consent of either Miss Lawson or Mrs. Birckhead; that Leslie was not in any way authorized or directed to produce the said mortgage for cancellation, or to receive any money on the said mortgage, principal or interest; that Isaac Carson and Joseph W. Nicholson were well acquainted with the fact that Leslie, in producing said mortgage for cancellation, was acting without authority.

Lawson v. Carson.

The bill calls for an answer under oath and for a decree that the defendants should pay to the complainants, the trustee and *cestui que trust*, the principal and interest due on the mortgage, and deliver up the bond and mortgage.

The answer of Isaac Carson, under oath, states that at the time of the execution and delivery of the deed by him to Joseph W. Nicholson, and the payment of the purchase money therefor by the said Joseph, he, Carson, agreed to pay and satisfy the mortgage given to the said Mary L. Lawson, or pay and procure the same to be satisfied; that on the 21st day of March, 1873, he, the said defendant, paid to Charles M. S. Leslie, an attorney at law and conveyancer in the city of Philadelphia, who then had the possession of the said bond and mortgage so as aforesaid given to the said Mary L. Lawson, and who held the same as the agent and attorney of the said complainant, Malvina Lawson, with the consent of the complainant, Mary L. Birckhead, the sum of $3,000 in full of the principal sum due upon and secured by the said bond and mortgage, and the further sum of $45 in full of the interest accrued upon the said principal sum of $3,000 and then unpaid, and that upon such payment the said Leslie, as attorney or agent for the said complainants, or one of them, executed and gave to the said defendant, as assignee of the said Mary Carson, receipts for the said payments of principal and interest, and also endorsed upon the said mortgage a receipt of the payment of the said principal sum of $3,000, reciting thereon that the same was in full payment and satisfaction of the said mortgage, and delivered to the defendant the said receipts endorsed thereon as aforesaid, and that immediately after said payment and said delivery of said receipts and said bond and mortgage to the said Carson, he took the said mortgage to the clerk's office of Camden county and procured the same to be canceled upon the record of said mortgage in said clerk's office.

Isaac Carson died after his answer was filed. He was not examined as a witness. Joseph W. Nicholson died before the filing of the bill.

The evidence shows that Leslie, who was a conveyancer in the city of Philadelphia, acted for Miss Lawson in loaning the money originally to the mortgagors; also that after the bond and mortgage were executed by the Cooks, Miss Lawson took them and had them in her possession from December, 1858, to 1869; that Cook paid her the interest up to 1866, and Mrs. Carson paid it to her up to October, 1869; after that date the interest was paid to Leslie under the following circumstances:

Mrs. Mary Carson had been paying the interest regularly on the bond and mortgage, to one or the other of the sisters, up to the time they moved to Westchester. She then objected to sending a check, on the excuse that she did not understand business and had no money deposited in bank. After several ineffectual efforts to get her to pay the interest, Miss Lawson says, she went to Leslie's office on business connected with another affair, and incidentally told him of Mrs. Carson's objections to sending the money and the trouble she was giving. Leslie said to her that if Mrs. Carson would bring the money to his office and leave it without giving any trouble, he would take it for complainants and give it to her sister or herself when they would call for it. Mrs. Carson was told of this arrangement, and after that called on Leslie and paid him the interest accruing upon the bond and mortgage, and took from him receipts signed in his name as agent for Miss Lawson. These interest moneys up to and including that collected on December 21st, 1872, were paid by Leslie to either Miss Lawson, the trustees, or her sister, Mrs. Birckhead, the *cestui que trust*, and were received by them as valid payments.

While these payments of interest were being made to Leslie, the bond and mortgage were in Leslie's safe, having been placed there under the following circumstances:

In 1869 Mrs. Birckhead and her sister, having sold the house in Philadelphia in which they were living, and having bought a house in Westchester, where they moved, collected together all their valuable papers, such as deeds and securities, and being somewhat troubled to know what to do with them, as they had workmen in the house, they, when at Leslie's office on

some other business, spoke to him incidentally of their diffi-
culty about the papers. Leslie offered to take care of their
papers for them if they wished it, and took them upstairs and
showed them a safe, and said that in that safe he kept his
clients' papers; that it was devoted to that purpose, and that if
they wished to keep silver, papers or any valuables, and were
afraid of moving them, they would be perfectly safe there.
The papers were afterwards put up by them, at their own house,
in a bundle covered with strong gray paper, tied with strings,
crossed and recrossed, and sealed with sealing wax. The bundle
contained the Cook bond and mortgage, two other mortgages on
property in Philadelphia, and various ground-rent deeds. It
was a large bundle, more than two feet square. It was taken
by them to Leslie's office. Miss Lawson says she told Leslie
there were the papers she had mentioned. She was about to
leave them on the table in the office, when he said, " No, come
upstairs; I will show you the safe in which they will be placed."
He took them up to a back room in the second story, opened a large
safe which contained numerous bundles of papers which he said
belonged to his clients. He placed their bundle of papers in the
safe in the presence of herself and sister, and told them they
would remain perfectly safe until they called for them. They
then left the office.

No one but the two sisters was present when the bundle was
made up, and no one but themselves knew what it contained.
Neither of them told Leslie anything as to its particular con-
tents, or that this bond and mortgage were in the bundle, or gave
him any authority whatever to open the package or with reference
to its contents, except to keep it safely in its then condition for
them or subject to their order.

On the 21st day of March, 1873, as appears by the testi-
mony of Frank G. Taite, who was a clerk employed by Leslie,
Isaac Carson, the assignee, with another person (presumed to
be Joseph W. Nicholson) called upon Leslie, at his office, and
paid him the sum of $3,000 principal and $45 of interest on the
bond and mortgage, for which a receipt was endorsed by him as
agent on the mortgage, and the bond and mortgage were then

surrendered by Leslie to Mr. Carson, who afterwards presented the mortgage so receipted to the county clerk and had it cancelled of record.

In June, 1873, Leslie absconded without having paid the $3,045, principal and interest on the bond and mortgage, to either of the complainants.

There was no evidence whatever in the case to show that the payment by Mr. Carson to Leslie was not *bona fide*, the complainants having failed entirely to substantiate the charge made in the bill that such payment was made as the result of fraud and collusion on the part of Isaac Carson, the assignee, or Joseph W. Nicholson, the purchaser, with Leslie, the conveyancer, or that the same was not made in good faith under the belief that Leslie was authorized to act for the mortgagee in the premises. The case, therefore, is a hard one in any event. The complainants have lost their money by the dishonesty of Leslie, if the payment to him by Carson is to be considered as authorized, and if not authorized the loss must fall on Nicholson or the Carson estate.

We have, then, the facts that Leslie had been employed by the complainants to invest money for the one or the other of them, and that he was so employed by Miss Lawson, now Mrs. Birckhead, to invest the money on the bond and mortgage now in dispute. That on Mrs. Carson making objection in 1869 to paying the interest by check or transmitting it by mail, Leslie was authorized by the complainants to receive from Mrs. Carson the interest which accrued upon the bond. That on the fact that such authority was conferred on Leslie being communicated to Mrs. Carson she paid the interest to him, and that it was in turn paid by him to these ladies, to whom it belonged, and was received by them as valid payments. They deposited the bond and mortgage, with other securities, wrapped up in a strong paper cover, bound round with string and sealed, with Leslie, solely for safe keeping, without informing him of the particular papers contained in it and without any authority to him either to open the bundle or to deal with its contents. The party bound by the bond and mortgage found them in the possession of the conveyancer, who

had been authorized by complainants to receive, and who had in fact received, the payments of.interest and who had originally negotiated the loan, and, being desirous of discharging the debt, paid the amount of principal and interest due thereon. On whom should this loss fall?

The defendant William C. Nicholson is the devisee of Joseph C. Nicholson. He stands in Joseph's shoes and is entitled to all equities which his devisor had, no more or less. Joseph C. Nicholson bought with notice of the mortgage. At the time of his purchase it was a subsisting lien. He bought with a contract that his grantor would discharge the mortgage, and paid his money to that grantor with the mortgage still of record. He does not occupy the position of a purchaser for value after the cancellation of the mortgage, relying on such cancellation that the premises were clear. *Harrison* v. *New Jersey R. R. Co., 4 C. E. Gr. 488.* His rights are those derived from the transaction in which Carson, the assignee, paid the amount to Leslie and received from him the securities. In other words, he is in the place of Carson and entitled to all equities which he could invoke.

Chancellor Runyon, in *Haines* v. *Pohlman, 10 C. E. Gr. 179* (at *p. 183*), says : " It is well settled, that the debtor is authorized to infer that an attorney or scrivener who has been employed to make a loan, is empowered to receive both principal and interest, from his having possession of the bond and mortgage given for the loan, or of the former only." Referring to *Williams* v. *Walker, 2 Sandf. Ch. 325 ; Hatfield* v. *Reynolds, 34 Barb. 612 ; Megary* v. *Funtis, 5 Sandf. 376 ;* see, also, *Crane* v. *Gruenwald, 120 N. Y. 274. Story on Agency § 98* says :

"An agent, authorized to take a bond, is not to be deemed, as of course, entitled to receive payment of the money due under that bond. But, if he is entrusted with the continued possession of that bond, an implication of such authority may be derived from that fact, in connection with the other."

*Dunlap's Paley on Agency 275* says :

" If the bond remain in the hands of the agent, that circumstance is evidence of the obligee's intention to trust him with the receipt of the principal and interest, and therefore a payment to him discharges the obligor."

Lawson v. Carson.

Sir John Trevor, master of the rolls, in *Wolstenholme* v. *Davies*, *Freem. Ch. 289; S. C., 2 Eq. Cas. Abr. 709*, says: "It was the constant rule of this court, that if the party to whom the security was made, trusted the security in the hands of the scrivener, payment to the scrivener was good," while it is repeatedly held that payment to the scrivener who does not have possession of the securities is not valid. *Henn* v. *Conisby, 1 Eq. Cas. Abr. 145 pl. 1; Dutchess of Cleveland* v. *Dashwood, 2 Freem. 249; S. C., 2 Eq. Cas. Abr. 709; Roberts* v. *Matthews, 1 Vern. 150 n.; Smith* v. *Kidd, 68 N. Y. 130.*

Leslie was not only the conveyancer who made the loan originally, and produced the bond and mortgage when Carson desired to pay it off, but he had been the authorized agent to receive the interest, had received it repeatedly, and his acts in that regard had as often been confirmed.

It is argued that the original agency of Leslie was terminated on his delivery of the bond and mortgage to Miss Lawson, and that it was not again renewed, either by the authority to receive the interest, or by the deposit of the bundle containing the securities. This is true as between Leslie and herself. But the question is, whether Carson was not justified in inferring that Leslie had actual authority from the evidence thereof with which Miss Lawson had clothed him.

In *Hayden* v. *Association, 15 Stew. Eq. 403*, Knapp, J., says: "Where one gives to another the power to practice a fraud upon innocent parties, the court will not interfere in his protection at the expense of those who have been deceived and misled by such fraud;" and in *Baldwin* v. *Howell, 18 Stew. Eq. 519*, Bird, V. C., says: "By placing this mortgage in the hands of Van Sikle, he made it possible for him to commit a fraud. It is true he did not trust Van Sikle, as his attorney, for any such purpose, but only as the simple custodian of the assets, for another particular object; but, nevertheless, by so doing, he gave him the power to use it as he did, and so through the instrument Baldwin had selected this wrong was committed."

But for the confidence reposed by the complainants in Leslie, it would have been impossible for loss to have been sus-

. tained by any of the parties to this transaction. They confided these securities to his care and keeping. It is true that they were not separated from other securities, that he was not even informed, of the contents of the package, and that he was not clothed with any powers of disposition, and that the bundle containing them was only given to him for safe keeping; but the complainants put it in Leslie's power, if guilty of a breach of trust, to defraud the mortgagors, because they made it possible for him to show that he was clothed by them with the apparent authority to deal with the papers as if representing the rightful owner.

It is a hard case, as before stated, but the recognized rule is, where one or the other of two innocent parties, must suffer by the fraud of a third, the loss should be sustained by the one whose conduct has made the fraud possible.

In recognition of this rule, I must advise that the bill be dismissed.