### KIRCHNER v. SCHMID.

(Common Pleas of New York City and County, Equity Term. September, 1893.)

ATTORNEY AND CLIENT—PAYMENT BY MORTGAGOR TO SOLICITOR OF MORTGAGEE.

Plaintiff agreed to sell to T., free from incumbrances, a lot on which defendant held mortgages for $9,500, which defendant promised to cancel in consideration of plaintiff's promise to pay him interest on the amount pending reinvestment. Plaintiff, defendant, and T. together employed a solicitor to represent each of them in the matter. Afterwards, plaintiff and T., in the absence of defendant, met the solicitor at his office, and T. then took from plaintiff a deed of the lot, gave a mortgage thereon in favor of defendant for $3,500, and paid the balance in cash. The solicitor retained $6,000 of the cash payment to be deposited pending reinvestment, and induced plaintiff to give a mortgage on another lot in favor of defendant for $6,000, representing that it was necessary to secure plaintiff's promise to pay interest. The solicitor was not in pos-

session of defendant's mortgages or of satisfaction pieces, nor had defendant authorized him to receive the money. The mortgages executed by T. and by plaintiff were afterwards received by defendant in good faith from the solicitor, in lieu of the mortgages which he had promised to release. The solicitor embezzled the $6,000 retained by him. *Held*, that the solicitor acted as agent for plaintiff in receiving the money, and not as agent for defendant, since a solicitor has no general authority to receive payment for his client, and therefore plaintiff was not entitled to cancellation of his $6,000 mortgage.

Action by Michael Kirchner against Francis J. Schmid to have canceled of record a mortgage alleged to have been procured by the fraud of defendant's agent, and to be void for want of consideration. Judgment for defendant.

J. Homer Hildreth, for plaintiff.
Samuel Greenbaum, for defendant.

BISCHOFF, J. While feeling for plaintiff the utmost sympathy because of the alleged financial ruin which it is claimed my adverse decision herein will inflict upon him, I cannot resist the conclusion that he is the victim of his own misplaced confidence in, I regret to be compelled to say it, an unworthy and dishonest attorney. Between two equally innocent persons, therefore, he must suffer the loss through whose fault the commission of the wrong was rendered possible. In brief, the facts are that in November, 1889, plaintiff was the owner of two adjoining lots on One Hundred and Forty-Eighth street, near Brook avenue, upon which defendant held two mortgages, one for $9,000, and the other for $500. The first-mentioned mortgage, only, was recorded. At the time mentioned, plaintiff had contracted to sell one of the lots to one Tisch, free and unincumbered, for $13,000, and, to enable him to make the sale, defendant orally promised to cancel his mortgages in consideration of plaintiff's promise to pay the interest to accrue pending a reinvestment of the principal in a manner satisfactory to defendant. Plaintiff, defendant, and Tisch thereupon mutually employed one John Mulhall, Jr., an attorney, to represent each of them as solicitor in carrying the proposed sale and cancellation of the mortgages into effect. On November 23, 1889, plaintiff and Tisch, in the absence of defendant, met Mulhall at the latter's office, and the sale was then and there so far consummated that Tisch received a deed of conveyance for the lot agreed to be sold to him in exchange for the consideration sum which was paid, $9,500 in cash, and $3,500 in bond and mortgage upon the lot sold, the bond and mortgage being in terms made payable to defendant as obligee and mortgagee, respectively. Mulhall was not at the time in possession of defendant's mortgages, or of the bonds or obligations which they were intended to secure, or of any satisfaction piece therefor, nor had he written evidence of authority to receive payment of the principal of those bonds or mortgages on defendant's behalf. Of the $9,500 paid by Tisch in cash, Mulhall retained $6,000, to be deposited by him with one of the trust companies pending reinvestment thereof, and,

upon Mulhall's representation that such was required to secure plaintiff's promise to pay the difference in the interest between the sum which the trust company would allow and the rate reserved pursuant to the terms of the mortgages which were proposed to be canceled, the latter executed his bond to defendant for $6,000 and a mortgage to secure it upon the remaining lot. In May or June, 1890, after the $3,500 and $6,000 mortgages had been recorded and returned from the register's office, Mulhall, representing to defendant that the principal sum of the $6,000 mortgage had been deposited with a trust company awaiting reinvestment subject to his approval, but without disclosing that the last-mentioned mortgage was intended by the mortgagor only to secure the difference in interest as stated, succeeded in persuading defendant to deliver up to him the $9,000 and $500 mortgages upon both lots, and the accompanying bonds, with a satisfaction piece for the former duly executed and acknowledged, except that the date of the day of its execution and acknowledgment was not inserted, in exchange for the $3,500 bond and mortgage made by Tisch, and the $6,000 bond and mortgage made by plaintiff. About the same time, also, defendant accepted payment by check of $60 which was remitted by plaintiff for the supposed difference between the interest to be allowed by the trust company and the semiannual installment of interest which would have accrued pursuant to the terms of the bonds and mortgages delivered to Mulhall for cancellation as above mentioned. In the making of the loans represented by the two mortgages last mentioned, Mulhall had represented defendant as attorney or solicitor, and prior to November 23, 1889, he had acted for defendant in similar capacity in several instances. It was furthermore unquestionably defendant's intention that Mulhall should act as attorney or solicitor for him in the matter of the reinvestment of the $6,000 believed to have been deposited with a trust company. With a view of relieving himself from continued liability for the interest, plaintiff, between November 23, 1889, and December 15, 1890, made diligent efforts to secure the reinvestment of that sum; and towards that end he caused several applications for loans upon bond and mortgage to be submitted to defendant, which the latter in each instance referred to Mulhall for investigation. Mulhall, however, seemingly delayed action with reference to the applications. Meanwhile, defendant became disatisfied with and distrustful of Mulhall, because of his tardiness and evasions in the investigation of the applications and other matters, and at last demanded of him that he return all papers and moneys in his possession. Compliance with repeated demands to the same effect having been omitted, defendant threatened Mulhall with prosecution, and the latter committed suicide. After his death, it transpired that Mulhall had never deposited the $6,000 as promised and represented by him, and that the $9,000 mortgage which covered both lots had never been satisfied of record; the satisfaction piece therefor, executed by defendant as above stated, being found among Mulhall's

office papers. Later, defendant, acting by the advice of counsel, executed and delivered to Tisch an instrument releasing the lot conveyed to the latter from the operation of the $9,000 mortgage. Plaintiff also ascertained the state of affairs, and thereupon instituted this action to procure the cancellation of the $6,000 mortgage upon his remaining lot, urging as the grounds therefor that in the exaction and delivery of that mortgage, and the retention of the principal sum thereof, Mulhall was acting as defendant's agent, and that the mortgage was void because secured by means of the misrepresentation of defendant's agent concerning its effect, and for want of consideration.

Let us now consider the legal aspect of Mulhall's relations to defendant. As solicitor, merely, he was without implied authority to receive payment of the principal sums of defendant's mortgages. 1 Lawson, Rights, Rem. & Pr. p. 287, § 172; Weeks, Attys. p. 451, § 219; Josephthal v. Heyman, 2 Abb. N. C. 22; Williams v. Walker, 2 Sandf. Ch. 325. His agency for the purpose mentioned did not, therefore, exist by virtue of the relation of attorney or solicitor and client, and, to charge defendant with responsibility for Mulhall's acts, such agency must appear either inferentially, from the fact that Mulhall was, at the time of payment, in possession of the bonds and mortgages intended to be paid, or of a properly executed acknowledgment of satisfaction of the mortgage debts, or expressly, from language, oral or written, and communicated to plaintiff, which indicated defendant's intention that plaintiff should pay to Mulhall on defendant's account in the particular instance of the mortgages which were sought to be satisfied. Smith v. Kidd, 68 N. Y. 130; Brewster v. Carnes, 103 N. Y. 556, 564, 9 N. E. Rep. 323. The burden of proof respecting the solicitor's agency to receive payment was upon plaintiff. Crane v. Gruenewald, 120 N. Y. 274, 277, 24 N. E. Rep. 456. The acts and declarations of the assumed agent only do not establish the agency. People's Bank v. St. Anthony's Roman Catholic Church, 109 N. Y. 512, 17 N. E. Rep. 408. Nor can the solicitor's general authority to receive payment of his client's securities or demands be inferred from the fact that his authority to receive payment was recognized in past transactions, to the knowledge of the person contending for the validity of the payment to him in a subsequent one. Smith v. Kidd, 68 N. Y. 130. It does not satisfactorily appear that Mulhall, at the time of the consummation of the sale to Tisch, was in possession of the bonds and mortgages which defendant had promised to cancel, or of any satisfaction piece therefor. Plaintiff was therefore put upon his inquiry concerning Mulhall's authority to receive payment. I do not overlook that Feig, a witness for plaintiff, testified that, some time before the consummation of the sale to Tisch, defendant told him that he had executed a satisfaction piece, and delivered it, with the bonds and mortgages, to Mulhall; but, in view of defendant's positive affirmation that he continued to remain in possession of the documents at all times until May or June, 1890, corroborated, as it is, by the fact that they were not produced to either plaintiff

or Tisch at the time of the delivery of the former's deed to the latter, I incline to the belief that Feig's statement of the substance of his interview with defendant was exaggerated. At any rate, there is no evidence from which either plaintiff's or Tisch's knowledge of the fact that Mulhall was in possession of the documents can be reasonably inferred. Mulhall's declarations to plaintiff that everything was "all right" or "fixed" are incompetent for the purpose, as already stated, and neither plaintiff nor Tisch can therefore be assumed to have treated with Mulhall upon the faith of an apparent authority of which they had no notice. Crane v. Gruenewald, 120 N. Y. 274, 277, 24 N. E. Rep. 456. Remembering, next, that, at the time of the delivery of the deed by plaintiff to Tisch, the latter was entitled and expected to receive a conveyance of the lot free and clear of defendant's mortgages, and that the former was legally and morally bound to cause those mortgages to be canceled, the most plausible inference from the facts is that both plaintiff and Tisch intrusted Mulhall with possession of sufficient of the consideration money paid, and that plaintiff delivered to him the $6,000 bond and mortgage which he seeks to have annulled in this action, to enable Mulhall to realize what the one expected to give and the other to receive. Hence the conclusion is that Mulhall, as the custodian of the moneys retained for deposit with a trust company, as well as in the procuration of the delivery and cancellation of defendant's mortgages, was acting as plaintiff's agent, and not as agent of defendant, who had carefully withheld from Mulhall even all apparent authority. Having enabled his own agent, by delivery of the $3,500 mortgage made by Tisch, and the $6,000 mortgage made by himself, each in terms made payable to defendant, to impose upon defendant, who accepted those mortgages in good faith in exchange for others canceled, plaintiff, not defendant, must suffer as the result of that agent's dishonesty and fraud. The conclusion that in the matter of retaining part of the consideration money of the sale to Tisch for the purposes of deposit with a trust company, and the delivery of the $3,500 and the $6,000 mortgages in exchange for those delivered up and canceled by defendant, Mulhall assumed to act as agent for plaintiff, with the latter's consent, necessarily disposes of the claim that defendant, by acceptance of the first-mentioned mortgages, ratified Mulhall's acts. Ratification is predicable of acts which were assumed to be done in the name of, or under the alleged authority of, the person against whom a ratification is sought to be invoked, but not of acts assumed to be done as the agent or representative of a third person. Story, Ag. § 251a; 1 Amer. & Eng. Enc. Law, p. 431; Trust Co. v. Walworth, 1 N. Y. 433--444. It is apparent that plaintiff's lamentable condition is a result of the very reprehensible practice of many persons, having adverse interests to subserve, to select one and the same attorney or solicitor to represent all parties in the same transaction; a practice which is commented upon and condemned in Cairns v. Pepper, (Pa. Sup.) 19 Atl. Rep. 336. It is unlikely that Mulhall's fraud and defalcation would have occurred if either plaintiff or Tisch had been

represented by another attorney, charged with the duty of causing their intentions to be carried into effect at the time of the consummation of the sale. There must be judgment for defendant upon the merits, with costs.