HOFFMAN v. FROMA REALTY CO. et al.

(Supreme Court, Appellate Division, First Department. December 20, 1912.)

1. WORDS AND PHRASES—"SCRIVENER."

A "scrivener" exercised conjoint duties of a banker, broker, and an attorney; his business being to receive other men's money, and lay out an interest, and then receive it back again, and keep it in his hands, and then again lay it out at interest.

[Ed. Note.—For other definitions, see Words and Phrases, vol. 7, p. 6359.]

2. PRINCIPAL AND AGENT (§ 105*)—"SCRIVENER'S RULE"—ESTOPPEL—KNOWLEDGE.

The "scrivener's rule," that where an agent who negotiates a loan for his principal is allowed to retain possession and control of the security taken on the loan, he has apparent authority, after maturity, to receive

payment for his principal, rests upon estoppel, and requires that he should have been the agent of the lender in making the loan, and that the indicia of indebtedness shall have been intentionally left in his possession, and that the' person relying on such rule must have known and relied on such agency and possession.

[Ed. Note.—For other cases, see **Principal and Agent**, Cent. Dig. §§ 298–310, 374; Dec. Dig. § 105.*]

3. MORTGAGES (§ 249*)—SCRIVENER'S RULE—PAYMENT.

The "scrivener's rule" has never been extended to hold that possession of the indicia of indebtedness by the assignor of a mortgage implied authority on his part to accept payment for the assignee.

[Ed. Note.—For other cases, see Mortgages, Cent. Dig. §§ 657–677; Dec. Dig. § 249.*]

4. PRINCIPAL AND AGENT (§ 105*)—SCRIVENER'S RULE—APPLICATION TO OBLIGATION.

As the "scrivener's rule" cannot be applied to justify a payment to a supposed agent of the creditor, except according to the strict letter of the obligation, it does not justify a payment of a part for the whole.

[Ed. Note.—For other cases, see Principal and Agent, Cent. Dig. §§ 298–310, 374; Dec. Dig. § 105.*]

Appeal from Special Term, New York County.

Action by Sol. Hoffman against the Froma Realty Company, the Title Guarantee & Trust Company, and others. Judgment for plaintiff, and the Title Guarantee & Trust Company and another appeal. Affirmed.

See, also, 138 N. Y. Supp. 1121.

Argued before INGRAHAM, P. J., and LAUGHLIN, CLARKE, SCOTT, and MILLER, JJ.

Benjamin N. Cardozo, of New York City, for appellants.
Lewis L. Delafield, of New York City, for respondent.

SCOTT, J. The essential facts are stated as follows by the learned trial justice:

"The Froma Realty Company owned the premises in question, subject to certain mortgages aggregating $13,000, and entered into a building loan agreement with said Hayman, whereby Hayman agreed to advance in installments as the building progressed the sum of $40,000, $13,000 of which was to be applied to the payment and discharge of the mortgages theretofore a lien upon said premises. The Froma Realty Company executed and delivered an undated and unacknowledged building loan mortgage in accordance with the said agreement, and also executed, acknowledged, and delivered to Hayman or his dummies several other bonds and mortgages, among which was the bond and mortgage in suit. Hayman was the attorney for the Froma Realty Company and had a number of financial transactions with it. It is therefore difficult to segregate particular sums as advances on these various bonds and mortgages above mentioned. The design seemed to be to place in Hayman's hands a number of securities, upon which he was to raise money for and pay over to the Froma Realty Company such moneys as he could obtain on the said securities. The plaintiff herein was at the time a merchant in Jacksonville, Ill., associated in business with his brother. The brother and Hayman appeared to be on somewhat intimate terms, and Hayman had made various investments for him in bonds and mortgages upon New York City real estate, and prior to the transaction under consideration had made an investment for

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

the plaintiff which had been entirely satisfactory to him. Hayman wrote to the plaintiff, offering him the $40,000 bond and mortgage. While it was not directly stated to be, it was so stated that any one would infer it was, a first lien upon the premises and ample security for the loan. The plaintiff immediately wrote to Hayman that he would accept the loan and inclosed his check for $40,000. The mortgage was recorded on January 3, 1910, and the assignment on January 15, 1910, and both instruments were returned to Hayman. Before they had been returned from the register's office the plaintiff, on account of ill health, had closed out his business in Jacksonville and intended going to California. He telegraphed to Hayman, advising him of his intention, and asking him to send the papers on to him if they should be returned from the register's office in time to reach him before he should leave for California, otherwise to hold them for further orders, to which Hayman replied that he would hold the papers for further orders. In May, 1910, the Froma Realty Company negotiated a loan upon the said premises from the Title Guarantee & Trust Company for $42,000, and upon the closing of said loan delivered to the said company a bond and mortgage for that amount, and from the proceeds of said loan paid off and satisfied the $13,000 mortgages which were prior liens to the plaintiff's mortgage, together with the interest thereon and certain taxes and other charges, and delivered a check upon the direction of the president of the Froma Realty Company to Morris H. Hayman for $26,889.64, which was stated by Hayman and the president of the Froma Realty Company to be in excess of the sum which had been advanced on the said bond and mortgage, and received from Hayman the original bond and mortgage for $40,000, the assignment thereof from Hayman to plaintiff, and a forged satisfaction piece purporting to have been signed by the plaintiff and acknowledged before Hayman as notary public. The check was made payable to 'Morris H. Hayman, Atty.' Thereafter Hayman paid to the plaintiff the interest which became due on said bond and mortgage in May, 1910, and November, 1910. Morris H. Hayman committed suicide and died on April 7, 1911. When plaintiff heard of Hayman's death and the involved condition of his affairs, he immediately came from California, and upon investigation found the mortgage satisfied and discharged of record. He brings this suit to have the satisfaction of the mortgage declared null, void, and canceled, and for a foreclosure of the mortgage."

There is no doubt that, as a matter of fact, the Title Company relied mainly upon the satisfaction piece produced by Hayman. . So much was admitted by the representative of the company who closed the loan, when he testified:

"Assuming that Mr. Hayman had not produced this satisfaction piece, I would not have paid him that $26,889.64 which I paid him on that date by Mr. Brown's order."

[1] The satisfaction piece having been proven to be a forgery, the Title Company now falls back upon the so-called "scrivener's rule" to justify its plea that it has paid plaintiff's mortgage. That rule is a very ancient one, arising at a time when the trade or profession of scrivener, now virtually extinct, was well recognized. A scrivener, as it has been said, exercised conjoint duties of a banker, broker, and an attorney. River Clyde Trustees v. Duncan, 17 Jurist, part 1, p. 701. His business was to receive other men's money, and lay out at interest, and then receive it back again, and keep it in his hands, and then again lay it out at interest. Wilkenson v. Candlish, Exch. 91.

[2] The rule itself has recently been formulated by the Court of Appeals as follows:

"Where an agent who negotiates a loan for his principal is allowed to retain possession and control of the security taken on the loan, he has ap-

parent authority, after maturity, to receive payment for his principal." Central Trust Co. v. Folsom, 167 N. Y. 285, 60 N. E. 599.

The rule rests, not upon any question of actual agency, but rather upon estoppel, and is confined within rather narrow limits. The mere possession by the assumed agent of the indicia of indebtedness is not enough. It is necessary that he also should have been the agent of the mortgagee or lender in making the loan, and that the indicia of indebtedness shall have been intentionally left in his possession by his principal. Doubleday v. Kress, 50 N. Y. 410, 10 Am. Rep. 502. It is by no means certain that Hayman acted as plaintiff's agent in making the loan. On its face the transaction was a purchase by plaintiff from Hayman, although it is very probable that the purpose of the Realty Company in making the bond and mortgage to Hayman was merely for the purpose of enabling Hayman to sell it and thus to obtain money for the use of the Realty Company. If this was the case, Hayman in selling the mortgage acted as the agent of the Realty Company, and the bond and mortgage never gained vitality until the assignment was made to plaintiff.

However this may be, the Title Company cannot estop plaintiff by reason of any fact of which it was ignorant at the time it made the payment which it now seeks to estop the plaintiff from questioning. Crane v. Gruenewald, 120 N. Y. 274, 24 N. E. 456, 17 Am. St. Rep. 643. It cannot protect itself upon the plea that it relied upon the "scrivener's rule," unless two things concurred: First, that all of the elements of the scrivener's rule were present; and, second, that it knew of their existence and relied upon them. If any essential element was not present, or, being present, was unknown to the Title Company it could not have relied upon the rule, and therefore cannot invoke it to estop the plaintiff. If the question were one of actual authority to accept payment, the payor could doubtless protect itself by showing that the person to whom payment was made actually had authority to receive it, although that fact was not known when the payment was made. But we are not dealing with a case of actual authority, because it is quite clear and is undisputed that Hayman had no actual authority to receive payment of plaintiff's bond and mortgage. Therefore, whether or not Hayman in fact acted as plaintiff's agent in making the loan is immaterial, because, even if he did, the Title Company is not shown to have known that fact, and therefore could not have relied upon it.

[3] All the information it had on the subject was derived from the papers before it, which showed that Hayman was the original mortgagee, and that as between himself and plaintiff the relation was merely that of seller and buyer. The "scrivener's rule" has never been extended so far as to hold that possession of the indicia of indebtedness by the assignor or mortgagor implied authority on his part to accept payment for the assignee. The doubt expressed in Central Trust Co. v. Folsom, supra, whether knowledge on the part of the payor of the scrivener's agency in making the loan was essential, is not applicable here. At best it was but the expression of a doubt, and in the case in which it was uttered the court found that there was

·evidence from which Folsom might readily have inferred, as was the fact, that the attorney to whom he paid the mortgage debt had acted as the agent of the lender in negotiating the purchase of the mortgage.

[4] There is, however, another quite sufficient reason why the Title Company cannot successfully invoke the "scrivener's rule" to· defeat plaintiff's claim, and that is the reason relied upon by the learned justice at Special Term. As he well says, the "scrivener's rule" has never been applied to justify a payment to a supposed agent of the creditor, except according to the strict letter of the obligation. As was said in Smith v. Kidd, 68 N. Y. 130, 23 Am. Rep. 157:

"No authority to change the terms of the contract can be implied from the fact that it was originally made through the attorney, and there is no evidence in the case of any such authority. Even though an agent had authority to receive payment of an obligation, it does not authorize him to receive payment before it is due."

Much less does it authorize him to receive payment, as payment in full, of less than is due.

Crane v. Gruenewald, supra, is not to the contrary. In that case, it is true, the debtor was held to have been justified in 'paying installments of the amount due; but these payments were made as installments, pursuant to an agreement to reduce the mortgage, and were not made, as in the present case, as full payment and satisfaction of the debt. Here the utmost that the Title Company undertook to pay in satisfaction of plaintiff's $40,000 mortgage was $26,889.64. The balance of the money it loaned went to the satisfaction of prior liens, to which, by the decree appealed from, it is to be subrogated. It had ample notice, both from the bond and mortgage themselves, as well as from the covenant contained in Hayman's assignment to plaintiff, that the full sum of $40,000 was due. It took the risk of relying upon Hayman's word that the debt really amounted to much less.

The counsel for the appellant Title Company has pressed upon us with much· force and ingenuity a number of arguments why the judgment appealed from should be reversed or modified. That they are not all discussed in this opinion is not to be taken as an indication that they have not been considered with care. They have been, but notwithstanding we remain convinced that the judgment is right.

Judgment affirmed, with costs. All concur.