### CATHERINE N. FORREST v. EDWIN FORREST.

Where both parties are residents in this State, an injunction will issue to restrain one of them from instituting and carrying on proceedings in another State to obtain a divorce.

So in case one of the parties changes his residence to another State, in order to institute a suit in the courts of that State.

Where parties are resident in this State, and one of them removes to another State for the purpose of obtaining a divorce, and remains there the length of time necessary to give its courts jurisdiction, and obtains there a divorce, it will be of no effect in this State, but will be disregarded by our courts, as obtained in fraud of the law.

THE parties to this suit were husband and wife, and had been residents of this State, where the defendant had a large property. Claiming to have changed his residence to Pennsylvania, he applied to the legislature of that State for a di-

Forrest v. Forrest.

vorce, and also commenced a suit for that purpose in the courts of that State. Thereupon the plaintiff brought this suit, for a divorce on the ground of adultery, and obtained a writ of *ne exeat*, forbidding the defendant from departing or removing his property from this State, a writ of *supplicavit*, forbidding him from molesting his wife, and an injunction restraining him from going on with his proceedings in Pennsylvania.

The *ne exeat* and *supplicavit* having been vacated, a motion was now made to dissolve the injunction.

*J. Van Buren*, for defendant.

*C. O'Conor*, for plaintiff.

*Edmonds, J.:* A great mass of matter has been dragged into this motion, by the papers on both sides, which has nothing to do with the question before me, and which is to be regretted the more, because of the labor to which it subjects me of hunting through so wide a meadow of margin for so inconsiderable a rivulet of matter.

I have nothing to do, on this motion, with the question of the guilt or innocence of either of these parties, of the main charge involved in the controversy, nor whether their behavior toward each other, as husband and wife, is justifiable or not; and counsel ought not to have permitted the parties to stuff the papers so full of irrelevant and impertinent matter.

The question upon which I am to pass is simply the propriety of retaining the injunction which Mrs. Forrest has obtained; and that embraces three propositions:—

1. As to restraining the defendant from disposing of his property;

2. From molesting his wife;

3. From prosecuting his suit in the courts of Pennsylvania.

The first two propositions were virtually disposed of on the motion to dissolve the writ of *ne exeat;* and I repeat the remarks which I then made, that there is no reason given for

apprehending that the defendant will not return to the State, from time to time, and be finally within the jurisdiction of this court when its judgment shall be pronounced, and none for believing that he will attempt to remove his large property beyond the jurisdiction of the court; and there is nothing but the fear of the plaintiff that he may do otherwise. This is not sufficient to warrant an injunction, any more than it would the *ne exeat;* and I now add, as to the *supplicavit,* that the defendant's conduct, which in one view seemed to justify an apprehension that he might molest the plaintiff, herself, during the pendency of the · suit, has been so satisfactorily explained, that there is nothing left but the fears of the plaintiff to warrant this part of the process. So far, then, as the injunction restrains the defendant from disposing of his property, and molesting his wife, it must be vacated. The remaining question is one of much more difficulty, and one in which it has not been easy for me to arrive at a satisfactory conclusion.

This depends on the question of residence, a question which, under the poor laws, the election law, and various others, is often attended with difficulty, and accompanied with some very nice distinctions, and some conflicting decisions in our books.

Upon this subject the evidence is, on one side, that the defendant was born in Philadelphia, and resided there until his marriage, when he changed his residence to New York; that up to the time of his separation from his wife he had a house in Philadelphia, in which he provided· for his mother and sister, but which, after his marriage, he did not occupy himself; that after the separation he was at that house, and said to his sister that that was now his only home, and that he avowed to Judge Conrad that he had resumed his residence in Philadelphia.

On the other side, the evidence is that he is as much personally in New York as ever; that he kept his establishment at Font Hill, which he had intended as his permanent residence, and bought some furniture for it; that he voted in

Westchester county; that in his petition to the legislature of Pennsylvania, which was sworn to by him, he described himself as a resident of New York, at the time he made these avowals to his sister and Judge Conrad; and that he made a mortgage in which he described himself as a resident of New York. So that, on the one hand is merely his declaration, about June, 1849, that he had resumed his residence in Philadelphia, unaccompanied by any act (not even sleeping there one night) carrying out his intention; and, on the other hand, is his oath before the Pennsylvania legislature, his voting in New York, his description of himself in a deed, all showing that he was still a resident of the State of New York. The description in the deed, so far as that matter is concerned, estops him from denying his residence in New York, and it may be supposed that his oath in Pennsylvania was sufficiently solemn to settle the matter. But he added to it an act equally grave, that, namely, of voting in this State, which he had no right to do unless a resident here.

To have given that vote he must have been a resident of this State for a year preceding the 6th of November, 1849, a resident of Westchester county for the then last four months, a resident of that election district for thirty days next preceding, and at that time an actual resident of the town. The declaration which he thus made of his residence, in November, 1849, is wholly consistent with the statement which he made to the Pennsylvania legislature, in February, 1850, that he had been a resident in New York till December, 1849, but is at war with the claim which is set up on this motion, that from June, 1849, he was a resident of Philadelphia. I do not well see how he could more explicitly and distinctly have indicated that on and after June, 1849, and until, at least, December of that year, he was a resident of this State.

It would be a waste of time and toil for me to fill this opinion with a detailed examination of the cases to which I have referred on this question of residence. It is enough for me to be fully aware that they show the rule of law to be in conformity with good sense, in pronouncing that, at least, up to

December, in 1849, the defendant was a resident in New York, and that he is mistaken in supposing that by avowing in June, 1849, his intention of resuming his residence in Pennsylvania, he was able to, or did, actually change his residence to that State. If, then, he did not change his residence in June, 1849, he changed it in December, 1849, or not at all, as appears from the papers before me. If he did not change it at all, but is still a resident here, it is not competent for him to give the courts of Pennsylvania jurisdiction to grant him a divorce; not even with the consent of his wife, much less without it. If he did so change it, and such change was in entire good faith, and without any reference to a divorce, still his suit in Pennsylvania, which had been restrained by the injunction in this case, cannot be sustained, because he had not been a resident there one year before he commenced his suit, and without such residence no divorce can be granted. But if he did so change his residence, and that for the purpose of giving the courts of that State jurisdiction of his case, nothing is better settled in our courts than that such temporary residence, for the purpose of conferring jurisdiction, is *in fraudem legis*, and will be disregarded. (2 Kent, 114.) In *Jackson* v. *Jackson* (1 John. R. 424), the parties were married and resided in this State. In October the wife went to Vermont for the purpose of obtaining a divorce, which she obtained in February following; but the court disregarded it, because it was in fraud of our laws. In *Borden* v. *Fitch* (15 John. R. 140), where a similar decree had been obtained, it was disregarded. Chief Justice THOMPSON, in delivering the opinion, said that to sanction such a divorce was contrary to the first principles of justice.

And in *Bradshaw* v. *Heath* (13 Wend. 423), this court held that if they considered the plaintiff as domiciled in New York, when she obtained a divorce in Connecticut, then the divorce should not be considered of any validity. In every view of the case, therefore, the suit which the defendant has brought in the courts of Pennsylvania is one which he cannot sustain, or in which, if he did obtain a decree by the default

or collusion of his wife, that decree would be disregarded by the courts of this State, for it would be always competent for our courts to examine into facts upon which it is alleged a judgment has been obtained by fraud. (2 Kent's Com. 109.) Under such circumstances, has the plaintiff in this suit, who is domiciled in this State, a right to invoke the aid of the courts of this State to protect her against this illegal prosecution of her in another State, by her husband, he being within this State, and subject to the jurisdiction of its courts? Upon this point no further authority need be cited than the clear and explicit language of STORY, supported, as it is, by the numerous authorities to which he refers. "Although the courts of one country have no authority to stay proceedings in the courts of another, they have an undoubted authority to control all persons and things within their own territorial limits. When, therefore, both parties to a suit in a foreign country are resident within the territorial limits of another, the courts of equity in the latter may act *in personam* upon those parties, and direct them, by injunction, to proceed no further in such suit. In such a case these courts act upon acknowledged principles of public law in regard to jurisdiction. They do not pretend to direct or control the foreign court, but, without regard to the situation of the subject-matter of the dispute, they consider the equities between the parties, and decree, *in personam*, according to those equities, and enforce those decrees by process, *in personam*." (2 Story's Eq. J. § 899.)

And in section 900 he adds: "It is now held that whenever the parties are resident within a country, the courts of that country have full authority to act upon them personally with respect to the subject of suits in a foreign country, as the ends of justice may require, and, with that view, to order them to take, or omit to take, any steps and proceedings, in any other court of justice, whether in the same or any foreign country." And this doctrine has been applied in the courts of this State, to suits and judgments in other State courts, where the latter were competent to administer proper relief.

(*Mead* v. *Merritt*, 2 Paige R. 402.) In this latter case the chancellor intimates, though I do not understand him as distinctly so deciding, that from considerations of comity and public policy, the court will not exercise the power with which it is thus clothed, where a suit has been actually commenced in the foreign court. I do not find any authorities to sustain that position, while, on the other hand, the English courts, and STORY, in his Commentaries, do not recognize the distinction.

But, if the distinction is well taken, it cannot be made to apply to a case where the foreign tribunal is not competent to grant full and adequate relief, and where there is reason to believe that the suit abroad is brought *in fraudem legis* of the laws and courts of this State. Is this then a case in which it is proper the power should be exercised? It is manifest from the facts as they are spread before me, that the defendant cannot obtain, in his suit in Pennsylvania, a decree which can be binding on his wife here. Would it be right to subject her unnecessarily to the harrassing evils of even an invalid decree, or compel her to expend the allowance made to her by her husband, in resisting the granting of such a decree?

If the defendant in this suit had shown any act of his tending to effect a change of residence, any thing but his mere declaration that he had changed it, any sleeping of nights, or tarrying of days, in Philadelphia, since his alleged change of residence, there might be room to suppose that it was not colorable only, and merely for the purpose of obtaining a divorce.

But nothing of the kind is shown, and simultaneously with the alleged change of residence — I speak now of the change in December; that of June I have already disposed of — simultaneously with it, is his application for a divorce, showing, too clearly for me to doubt, that the change, if it really existed, was only for the purpose of giving the authorities of that State jurisdiction over his conjugal relations. No doubt he supposed he had a perfect right to do so; but in this he is mistaken. The law does not warrant such a proceeding, but, on the other hand, demands of our courts that they should

protect his wife from being thus subject to a jurisdiction foreign both to her legal domicil, and to his.

There was an objection taken to the proceedings in this suit — that the wife had sued the husband without appearing by her next .friend — and I am requested by the counsel for the plaintiff to reconsider that decision. That I cannot do, for it was a decision of the General Term on appeal, and is the law of this court, and of this case. The defect, however, is amendable, and the plaintiff may amend in this respect, in ten days. If she does, the injunction will be retained, so far as it affects the suit in Pennsylvania, and, if she does not, it will be dissolved; and, in any event, it will be dissolved as to the other matters embraced in it.