THE CENTRAL TRUST COMPANY of New York, as Substituted
Trustee of the Separate Estate of ISABEL VON LINDEN, Appel-
lant, v. GEORGE W. FOLSOM, and DANIEL MORISON, as Trustee
of the Separate Estate of ISABEL VON LINDEN, Respondents.

*Payment — when a mortgagor making a payment to the attorney of the owner of the
mortgage is not protected in so doing — scrivener rule.*

Where an attorney, who did not make the investment originally, and who has no
direct authority to receive payment of the principal of a bond and mortgage,
has received, by authority of the assignee thereof, one payment of interest,
and has obtained, in some undisclosed manner, the physical possession of the
bond and mortgage, but not of the assignment thereof, he has not such appar-
ent authority to receive payment of the principal of such bond and mortgage
as will protect the mortgagor in making a payment of the principal sum
secured thereby to him. To justify such an inference of authority on the part
of the attorney, he must have had the control of the investment from the
beginning to the end.

APPEAL by the plaintiff, The Central Trust Company of New
York, as substituted trustee of the separate estate of Isabel von
Linden, from a judgment of the Supreme Court in favor of the
defendants, entered in the office of the clerk of the county of New
York on the 10th day of April, 1897, upon the decision of the court
rendered after a trial at the New York Special Term dismissing the
complaint.

*Alfred J. Taylor*, for the appellant.

*Geo. V. N. Baldwin*, for the respondents.

PATTERSON, J.:

This action was brought to compel the surrender to the plaintiff
of a certain bond and mortgage which, it was alleged, belonged to
a trust of which the plaintiff was the trustee, and which it was
claimed wrongfully came into the possession of the defendant
George W. Folsom. There was no imputation of any direct or
intended wrongdoing on Mr. Folsom's part. It appeared that he
was the owner of the premises upon which the mortgage was a
lien. Prior to July, 1883, that bond and mortgage belonged to Ada
L. Sutton. In September, 1885, it was assigned by Ada L. Sutton

(Saalfield) to Daniel Morison, trustee of the trust mentioned in the complaint. The plaintiff is the substituted trustee of that trust. It appears in evidence that on the 1st day of May, 1886, Mr. Folsom drew a check for interest which fell due that day on the bond and mortgage ; that check was drawn to the order of one Francis H. Weeks, as attorney for Ada L. Sutton. He received from Weeks in return a receipt which purported to be that of Daniel Morison, trustee, and it is conceded that that was the first intimation Mr. Folsom actually had of a change in the ownership of the bond and mortgage. During that same month of May, Mr. Folsom, desiring to pay off the mortgage, went to Weeks and paid to him the sum of $30.15, an amount of interest, and also the sum of $7,000, being the principal of the bond and mortgage. The check for interest was drawn to the order of Francis H. Weeks. The check for the principal was drawn to the order of Francis H. Weeks, attorney. Those checks were indorsed by Weeks and passed into his private bank account, and the money was never paid over to Morison, trustee. There can be no reasonable doubt that Mr. Folsom knew that Morison was trustee, and that the bond and mortgage belonged to him as such trustee. At the time these payments were made Weeks delivered to Mr. Folsom the bond and mortgage, and surrendered to him certain assignments thereof, *but not the particular assignment from Miss Sutton to Morison, trustee.* At the same time Folsom received a promise from Weeks to procure and deliver a satisfaction piece of the mortgage. The defense Mr. Folsom makes to the action is that he paid off the principal of the mortgage to the attorney for Morison, the trustee, and that by such payment the debt upon the bond was discharged and the mortgage satisfied in fact. This claim is based altogether upon the theory that payment to Weeks sufficed to extinguish the indebtedness on the bond and satisfy the lien of the mortgage. It is not pretended that Weeks had any direct authority to accept payment for the creditor. He had received one payment of interest and had the physical possession of the bond and mortgage. But how he got that possession is undisclosed. It is not shown that Morison intrusted it to him. It appears by Morison's testimony only that Weeks' office was the proper place at which to

pay interest. It does not appear that Weeks had the rightful possession of the securities. Morison says that all of his personal securities, as well as those belonging to the trust, were kept in a tin box belonging to him in Weeks' safe. The argument is made that because Weeks was authorized to receive interest, and also had in his possession the securities, Mr. Folsom was justified in relying upon the apparent authority of Weeks in accepting payment of the debt secured and surrendering the securities. But those two circumstances standing alone were not sufficient to justify the payment to Weeks. He was not an attorney in fact. He was not a general agent. But the payment was made to Morison's legal adviser, and the learned counsel for the defendant Folsom relies upon what has been called the "scrivener rule" and insists that it may be applied in this case to determine the right of a person paying money to rely upon the apparent authority of the one to whom the money is paid. That rule had its origin in England, where a scrivener "was a person to whom money or property was intrusted for the purpose of lending it out to others at a profit payable to his principal, but also at a commission or bonus for himself." (21 Am. & Eng. Ency. of Law, 881.) The origin and history of that rule is fully given in *Williams* v. *Walker* (2 Sandf. Ch. 325), where it was applied in a case presenting many features in common with the one at bar, and it was so applied to a payment made to a solicitor upon the analogy existing between solicitors and attorneys and scriveners under the English law. The rule is that where a solicitor *who makes the loan* receives the interest and has the securities in his possession at the time of payment of the principal, that principal being due, the person paying the money may rely upon the apparent authority of the attorney or solicitor to receive that money. The authority is not to be inferred only from the attorney having received interest, nor from the mere possession of the security, but it must result from the whole control of the investment, from beginning to end, by the attorney or solicitor. The lender must part with his money to the solicitor for investment and give him absolute control of the whole matter. The rule was referred to in *Smith* v. *Kidd* (68 N. Y. 130); but the payment was held to be ineffectual there because the attorney did not have the possession of the securities, although he originally made the loan and received the interest. In *Crane* v. *Gruenewald* (120

N. Y. 274) the rule is referred to both in the opinion of the court and in the dissenting opinion. It is referred to by PARKER, J., as follows : " If a mortgagee permits an attorney *who negotiates a loan* to retain in his possession the bond and mortgage after the principal is due, and the mortgagor, with knowledge of that fact, and relying upon the apparent authority thus afforded, shall make a payment to him, the owner will not be permitted to deny that the attorney possessed the authority which the presence of the securities indicated that he had ; " and POTTER, J., refers to the rule as being sufficient evidence of authority if the attorney *who negotiated the loan* is subsequently intrusted by the creditor with the possession of the bond and mortgage. So in *Doubleday* v. *Kress* (50 N. Y. 410) it is said that payment of the principal to *the agent who took the security or negotiated the loan for which the security was taken,* and was thereafter intrusted by the owner with its possession, is sufficient, and the payment is valid ; and PECKHAM, J., states that the reason of the rule that *one who has made the loan as agent and taken the security* is authorized to receive payment when he retains possession of the security, is founded upon human experience, that the payer knows that the agent has been trusted by the payee about the same business, and he is thus given a credit with the payer. The law as applied in this state, being derived from the English rule, which had its origin in the relation of the scrivener to his client, the same elements must exist in order to protect the payer in making payment. There is no evidence whatever in this case to show that Weeks was employed by Morison to make this investment. Therefore, there is nothing to show that that confidence was reposed in him. All that appears is that one payment of interest was made to Weeks, after Morison, trustee, became the owner of the bond and mortgage, and that, when he went to pay off the mortgage, the bond and mortgage itself was in the physical possession of Weeks. *But the assignment by which the title to the bond and mortgage was vested in Morison, trustee, was not in Weeks' possession.* He did not deliver it to Folsom, and, therefore, he did not (so far as appears) have that which was the muniment of the trustee's title to the bond and mortgage.

There was a failure of proof, therefore, of material facts which it was necessary to show in order to justify Mr. Folsom in relying upon

an apparent authority possessed by Weeks to receive payment of the principal, and for that reason the judgment should be reversed and a new trial ordered, with costs to abide the event.

VAN BRUNT, P. J., O'BRIEN, INGRAHAM and McLAUGHLIN, JJ., concurred.

INGRAHAM, J. (concurring):

I concur in the conclusion reached by Mr. Justice PATTERSON, that there should be a new trial. It is not clear from the testimony that when the defendant paid Weeks the principal of this bond and mortgage such payment was to Weeks as attorney in fact for the assignee of the mortgage. It does not appear that any statement was made at the time of the payment of the $7,000 as to any authority of Weeks to receive the payment of the principal, or as to the circumstances connected with the possession of the bond and mortgage by Weeks. There is nothing to show that this money was paid to Weeks as attorney in fact for Morison rather than the attorney for the defendant Folsom. Weeks had been acting as attorney for both the defendant and for Morison as trustee, and it is not at all clear that the defendant Folsom did not recognize Weeks as his attorney at the time of this payment, and intrust him with the money for the purpose of paying the mortgage and procuring the necessary instruments to satisfy it of record. When the defendant called upon Weeks, Weeks produced the bond and mortgage, with the various assignments which vested the title to the mortgage in Morison as trustee. The transfer to Morison was not recorded, and the money was paid to Weeks by a check drawn to the order of Francis H. Weeks, attorney, without specifying the person for whom he was attorney, and was delivered to Weeks, with a statement from Weeks that he would cause the assignment of the mortgage to Morison to be recorded, and would procure from Morison a satisfaction piece of the mortgage, which he also agreed to have recorded, so that the mortgage could be satisfied upon the record. As to the recording of these instruments and the proper satisfaction of the mortgage upon the record, Weeks was requested by the defendant to act as defendant's attorney, and not as attorney or agent for Morison. Thus, the principle upon which a payment to an attorney

who has possession of the securities or obligations to be satisfied binds the person for whom he assumes to act in receiving payment, would not apply. The principle upon which it has been held that a scrivener or attorney who invests money for a client, and who retains the securities or evidences of indebtedness, is presumed to be intrusted with a power to receive the principal and interest, seems to be largely based upon the implied authority granted to an attorney through whom the loan has been made, to receive the principal implied by the attorney's retaining possession of the security evidencing the indebtedness. The case upon which this doctrine rests seems to be that of *Whitlock* v. *Waltham* (1 Salk. 157). The facts of that case are stated as follows : " The interest of a mortgage was paid to and received by the scrivener that put out the money ; the scrivener proved insolvent, and the question was, who should bear the loss ? " And it was decided in that case that if the scrivener be intrusted with the custody of the bond, he may receive the interest, and, though he fails, yet the mortgagee shall bear the loss ; and that is also so, if he receives the principal and deliver up the bond, for, being intrusted with the security itself, it shall be presumed he is intrusted with the power over it, and with a power to receive the principal and interest, and the rather because the giving up of the bond upon the payment of the money is a discharge thereof ; otherwise if the obligee take away the bond, for then he hath no authority to receive any money. That case has been followed by a long line of authorities in England and in this country ; but in every case that I have been able to discover, authority to receive payment has been inferred from the mere possession of the instrument or obligation evidencing the indebtedness only in the case of a scrivener or attorney who represented the creditor in making the loan, and where the possession of such evidence of debt was continued in the possession of such scrivener or attorney. It is not alleged that the mere possession of an instrument or obligation, payable to another, unindorsed, invests the holder of such instrument with the right to receive from the obligor or debtor payment of the obligation. It is only where an agency has existed at the inception of the transaction, viz., the making of the loan, which is continued by the creditor or obligee allowing the obligation to remain in the hands of the attorney, that a debtor is entitled to presume that the original authority

to make the loan has been continued and enlarged so as to confer an authority to receive payment thereof.

The authorities cited by the respondents, holding that where the owner of property has invested a third person with the apparent title to it, any one acting in relation to the property relying upon such apparent title so conferred is protected, do not apply to this case; because those authorities are based upon the principle of estoppel, the owner being estopped from denying that the person upon whom he has conferred the apparent title to the property is the owner. Here Morison never conferred upon Weeks the apparent title to this bond and mortgage, the mortgage standing in the name of Morison as trustee, of which fact the defendant had notice. It does not appear from the record that Weeks acted as attorney for Morison, or for the estate of which Morison was trustee, in making this investment of the trust estate; nor does it appear that the possession of Weeks of this bond and mortgage was authorized by Morison, so that Weeks rightfully had possession. The mere fact that Morison's box containing the securities of the estate was left in a safe in Weeks' office was hardly of itself sufficient to show that the custody of the security was given to Weeks. The evidence failed, therefore, to bring the case within the authorities cited to show that Weeks, as attorney for the estate, had made the loan and had been allowed by the obligees to retain possession of the securities after the investment by the estate of its money.

I, therefore, concur in directing a new trial.

Judgment reversed, new trial ordered, costs to appellant to abide event.