(75 Misc. Rep. 297.)

### MILLER v. MYERS.

(Supreme Court, Special Term, New York County. January, 1912.)

1. INJUNCTION (§ 33*)—SUBJECTS OF RELIEF—ACTIONS AT LAW.

The mere illegality of contracts to pay defendant commissions for procuring engagements, and 'engaging defendant as plaintiff's manager at a weekly salary, is not ground for an injunction against the maintenance of suits at law on such contracts by defendant in foreign jurisdictions, unless it be shown that the suits are harassing.

[Ed. Note.—For other cases, see Injunction, Cent. Dig. §§ 70, 71; Dec. Dig. § 33.*]

2. INJUNCTION (§ 118*)—SUBJECTS OF RELIEF—ACTIONS AT LAW.

A complaint showing that plaintiff, a resident of the state and a theatrical artist, contracted to pay defendant commissions for procuring engagements, and engaged defendant as manager at a weekly salary, seeking to have these contracts declared void and defendant restrained from harassing plaintiff by suits in other jurisdictions, and alleging illegality of the contracts under Laws 1910, c. 700, § 185, subd. 2, as providing a higher rate of commission than is allowed for procuring theatrical engagements, that defendant had failed to perform the contracts, that he had once sued plaintiff for salary and attached his property in another state, and threatened similar suits elsewhere, but failing to show when, if ever, plaintiff, who is absent from the state, will return, or that he has any property in the state or elsewhere than that which accompanies him, fails to state a cause of action.

[Ed. Note.—For other cases, see Injunction, Cent. Dig. §§ 223–242; Dec. Dig. § 118.*]

Action by Albert Miller, also known as the Great Howard, against Joe Myers. On motion by defendant for judgment on the pleadings. Granted.

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

James Foster Milliken, for plaintiff.
Leon Laski, for defendant.

BIJUR, J. [1] Motion by defendant for judgment on the pleadings. The complaint shows that plaintiff, a theatrical artist, made two contracts; one agreeing to pay the defendant commissions for engagements and the other engaging defendant as his manager at a weekly salary. The contracts are annexed as exhibits to the complaint, the first dated December 24, 1909, and the second July 19, 1910. Plaintiff alleges: (a) That the contracts are illegal under the Laws of 1910, c. 700, § 185, subd. 2, in effect June 25, 1910, as providing a higher rate of commissions than the law allows; (b) that the defendant has failed to perform the contracts; (c) that the defendant has once sued plaintiff and attached his property in Illinois (which suit, however, plaintiff ended by payment), and has threatened similar suits elsewhere. Plaintiff asks that the contracts be declared void, and that the defendant be restrained from harassing him by suits, except one to be prosecuted in this state. If the contracts are void, plaintiff has a good defense at law against these suits. No case is cited by plaintiff wherein under like circumstances equity has undertaken to decree a contract void. The rule seems to be the contrary. Town of Venice v. Woodruff, 62 N. Y. 462, 20 Am. Rep. 495. There seems to be little ground for claiming the contracts to be illegal. The first contract was made six months before the law referred to went into effect, and the second contract does not appear to be one at all for "procuring engagements," the character of the service covered by the statute. It engages the defendant as manager, and says in so many words that the contract has nothing to do with the previous one, which covered the procuring of engagements. Indeed, in paragraph 5 of the complaint, the plaintiff alleges that the defendant agreed "generally to devote his whole time and attention to the business of this plaintiff," thus expressly negativing the notion that he was to be the mere booking agent described in the statute. Plaintiff pleads the failure of defendant to perform various services enumerated—most, if not all, of which are not even mentioned in the contracts between the parties. These services which defendant charges were not performed are not pleaded as a part of the contract, but as matters which the defendant "undertook to do" in order "to induce plaintiff to sign" the second agreement. There is, it is true, in paragraph 7 of the complaint, a general allegation that "defendant failed and neglected to perform the conditions and covenants of said agreements, and more particularly of the one of July 19, 1910," but this is qualified by the detailed recital above referred to. Even assuming, however, that the complaint indicates that one or both the contracts may be illegal, or that it properly pleads that the defendant has not duly performed his part thereof, these contentions standing by themselves, though constituting a legal defense to, furnish no adequate ground for, an injunction against suits brought by the defendant, unless it be shown that these suits are "harassing." In other words, the mere fact that the plaintiff has a good defense is no reason why a

court of equity should enjoin the defendant from bringing a suit on an alleged cause of action; otherwise no actions at law would be tried in equity through this device.

In Griffith v. Dodgson, 103 App. Div. 543, 546, 93 N. Y. Supp. 155, 158, Ingraham, J., says:

"But this jurisdiction has never been extended so far as I know to a case where the reason for asking the interposition of a court of equity can be set up as a defense in the court having original jurisdiction of the litigation."

There must be equitable considerations other than, or perhaps in addition to, the claim that plaintiff has a good defense to warrant interposition. It is noticeable in the first place that the granting of relief is limited to "special cases" (Vail v. Knapp, 49 Barb. 299, 304, 310; Burgess v. Smith, 2 Barb. Ch. 276, 280; Claflin v. Hamlin, 62 How. Prac. 284) and that in all cases in which such an injunction was granted it was because, as said in Edgell v. Clarke, 19 App. Div. 199, 200, 45 N. Y. Supp. 979, 980, "equity and good conscience require it." Thus, in the Claflin Case, supra, "the assignments on which the suits are based had been decided to have been obtained by fraudulent representations." In the Vail Case, supra, the suit in the foreign jurisdiction was brought to evade the substantive law of this state, whereunder a certain mortgage was a lien upon railroad cars which were attached in Vermont. In Dinsmore v. Neresheimer, 32 Hun, 204, the purpose of the District of Columbia suit was held to be to evade a rule of substantive law applicable in this state. In Locomobile Co. v. Am. Bridge Co., 80 App. Div. 44, 80 N. Y. Supp. 288, the second action in Connecticut was enjoined because its object was held to be merely to prevent the use by plaintiff of a necessary deposition. See, also, Webster v. Columbia Life Ins. Co., 131 App. Div. 837, 116 N. Y. Supp. 404; Forrest v. Forrest, 2 Edm. Sel. Cas. 180; Gibson v. Am. Loan & Trust Co., 58 Hun, 443, 12 N. Y. Supp. 444.

On the other hand, in White v. Caxton, 10 Civ. Proc. R. 146, an injunction was denied, the following phrases appearing in the opinion:

"The mere assertion that the Ohio suit is vexatious is but an assertion. * * * Again, it may well be doubted whether the property now in defendant's hands is sufficient to secure their lien."

A significant case is found in Edgell v. Clarke, 19 App. Div. 199, 45 N. Y. Supp. 979. A suit between residents of this state had been brought in Mississippi. It was claimed by plaintiff that the object of the action was to enable testimony to be introduced which would be inadmissible in this state under section 829 of the Code. To this the court replied that there was nothing either inequitable or unjust in that consideration; that merely a rule of evidence, not one of substantive law, was involved; that nothing was sought in Mississippi that was contrary to the public policy of this state; and that not even the mere convenience of witnesses would avail to enjoin the Mississippi suit, although the action there was purely transitory and personal. It was pointed out that defendant had obtained a lien on property of the plaintiff in Mississippi. Indeed, the court said that suits were no doubt always brought in the foreign jurisdiction because it was more advantageous to defendant for some reason to go there,

and that that mere fact was not sufficient to warrant the granting of an injunction, as otherwise our citizens would always be enjoined from bringing suit in a foreign jurisdiction.

[2] When I come to examine the allegations of the complaint from which a purpose to harass the plaintiff may appear, I find nothing more than that the plaintiff is a resident of this state, and that his profession requires him to be absent therefrom most of the time, and that he is now so absent. There is no allegation when he intends to return, nor any that he ever intends to return; nor any indication that he has any property in this state, or that he has any property anywhere except the paraphernalia of his profession which he has with him out of the state; nor any offer to give security for any judgment that may be recovered against him here. He proposes naively that the defendant shall bring no actions against him for the weekly installments provided in the contract in the places where he is performing and where he has his property with him, but shall bring the suit to test his rights only in this state; yet from all that appears defendant may never be able to obtain personal service or process in this state upon the plaintiff, and I can readily conceive of contingencies that may make "substituted service" impossible under the statute, or ineffective under the rule in Pennoyer v. Neff, 95 U. S. 714, 24 L. Ed. 565.

But, even admitting that substituted service might be available, plaintiff can scarcely claim that he has presented a meritorious case in equity when defendant is thereby relegated to a form of practice so cumbersome and so precarious under the circumstances. It seems to me, however, that the controlling equitable consideration is that plaintiff offers no assurance that a judgment in this state against him shall be satisfied, as against the security now afforded to that effect in other states in the shape of the personal property which accompanies him, as well as his weekly earnings, which may well be dissipated before he returns to this state, if ever. Plaintiff does, indeed, attempt to indicate that there was something oppressive in a suit heretofore brought by defendant against him in Chicago by alleging that it was begun by attaching plaintiff's property in that state at 6 o'clock in the evening. But from all that appears that time, place, and method were the only ones open to defendant to pursue his rights under the laws and according to the practice of a sister state. Coleman v. Brown, 126 App. Div. 44, 48, 110 N. Y. Supp. 701. Nor can the complaint be sustained merely on the ground that it is directed against the defendant's bringing a "multiplicity of suits." Here again, while the existence or threat of a multiplicity of suits may be one of the factors upon which relief of the nature sought should be granted, it is not sufficient in and of itself. Pom. Eq. Juris. (3d Ed.) § 250. There must be real equitable considerations. Thus, for example, a common case is the one where one action having already been decided against plaintiff, who has appealed from the determination, subsequent suits involving the same issues will be restrained for obvious reasons, at least until the determination of the appeal. See Norfolk & N. B. H. Co. v. Arnold, 143 N. Y. 265, 38 N. E. 271; Fraley v.

Delmont, 110 App. Div. 468, 97 N. Y. Supp. 408. But in the case at bar the only suit that has been brought was, according to the complaint, discontinued upon plaintiff's payment. In respect of this branch of the jurisdiction sought to be exercised I can only say that the considerations which I have set forth above as indicating an absence of equity in plaintiff's favor are equally determinative against the plaintiff's cause of action. It may be said that many, if not all, the averments which I have just pointed out as missing from this complaint might be covered by conditions imposed by a court of equity upon granting to plaintiff the relief prayed for, and that such conditions, in the nature of compelling plaintiff to do equity when he seeks equity, are rather rules of administration of the power of the court than a part of a cause of action in equity. See Winterson v. Hitchings, 9 Misc. Rep. 322, 30 N. Y. Supp. 260. It seems to me, however, that I cannot anticipate what conditions may or may not ultimately be imposed by a court of equity as a prerequisite to the granting of relief. The question presented is whether the complaint states an adequate cause of action. In view of plaintiff's absence from the state, and of his failure to allege when, if ever, he will return, that he has any property in this state, or indeed any property anywhere except that which accompanies him, or that he has any means of responding to a possible judgment against him except his weekly earnings, upon which, in a certain sense, the contract indicates that defendant's compensation is predicated, plaintiff has not merely failed to show that it would be inequitable that defendant should sue him in foreign jurisdictions, but indeed has rather demonstrated affirmatively that it would be inequitable to prevent defendant from pursuing his rights under the laws and according to the practice of a sister state. For these reasons, in my opinion, the complaint does not state a cause of action. Defendant's motion for judgment on the pleadings is granted, with $10 costs, and with leave to plaintiff to serve an amended complaint, if he be so advised, within 10 days after notice of entry of the order, and on payment of the costs of the action to date.

Motion granted.